THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.*
CALVIN L. KING, Appellant.

The provision of the Penal Code (§ 383), declaring that "no citizen of this
state can, by reason of race, color or previous condition of servitude, be
excluded from the equal enjoyment of any accommodation, facility or
privilege furnished by  *  *  *  owners, managers or lessees of theaters
or other places of amusement," is not violative of the constitutional
provision protecting the property rights of individuals, but is a valid exer-
cise of the police power of the state over a subject within the cognizance
of the legislature.

An indictment under said provision alleged, in substance, that defendant
being one of the owners of a skating rink, a place of amusement, did,
on a day named, "exclude from the equal enjoyment of any and all
accommodation, facility and privilege of said skating rink" certain per-
sons named, citizens of the state, "by reason of race and color." *Held,*
sufficient; that it was not necessary to aver with any greater particularity
the circumstances constituting the offense.

It appeared on the trial that, on the day named, there was an exhibition
given at said skating rink; that tickets of admission were sold by agents
of the proprietors at the office on the premises, but persons who had not
procured tickets were admitted on payment, at the door, of the charge for
admission; that during the evening certain colored men made applica-
tion at the office for tickets, but that said agents, acting in accordance
with defendant's instructions, refused to sell to them because they
were persons of color. *Held,* that this proof was sufficient to establish
the averment that said persons were excluded from the rink; that
the refusal to sell the tickets provided by defendant as evidence of the
right of persons having them to admission, based upon the ground
stated, justified the applicants in supposing and the jury in finding that
defendant intended to and did exclude them.

(Argued June 22, 1888; decided October 2, 1888.)

APPEAL from judgment of the General Term of the Supreme
Court in the fourth judicial department, entered upon an
order made November 9, 1886, which affirmed a judgment of
the Court of Sessions of Chenango county, entered upon a
verdict convicting defendant of a misdemeanor. (Reported
below, 42 Hun, 186.)

The substance of the indictment and the material facts are
stated in the opinion.

*E. H. Prindle* for appellant.    The law should not establish social relations.    The law under which defendant was indicted promotes amalgamation, tends to the destruction of both races, and is void.    The legislature is not omnipotent. (*Sweet* v. *Hurlburt,* 51 Barb. 317; *Calder* v. *Bruce,* 3 Dall. 386.)    A law that prescribes that the owners of private property, like a skating rink, shall devote it to the use of colored people, is unconstitutional and void.    (1 Greenl. on Ev. 10, § 6.) The colored people were not deprived of the privilege of establishing rinks of their own and skating in them.    (*People ex rel. King* v. *Gallagher,* 11 Abb. 187.)    The evidence does not show the offense charged in the indictment.    The indictment charges excluding colored citizens from the rink.    The evidence shows only that defendant's agent refused to sell them tickets.    (Wharton's Am. Crim. Law [4th. ed.] 224.)    The means by which the persons were excluded should have been set out; if any fact or circumstance which is a necessary ingredient in the offense be omitted in the indictment, such omission vitiates the indictment, and the defendant may avail himself of it by a demurrer, motion in arrest of judgment, or writ of error.    (Archbold's Crim. Plead. 42, 43.)    Defendant may have been excluded by being deterred from going in, or by being put out after he got in.    (See Webster's Dictionary: *People* v. *Wilber,* 4 Park. 10; *People* v. *Allen,* 5 Denio, 77.) The statute of jeofails does not cure defects of this character. (Code of Crim. Pro. § 284, subds. 6, 7.)

*George P. Pudney* for respondent,    The law gives to every person and citizen certain rights, called civil rights, from which he shall not be excluded by reason of his race or color    The rights thus given are the equal enjoyment of the privileges furnished by managers and owners of places of public amusements, which would include theaters, skating rinks, and any other place of public amusement.    (*Munn* v. *Illinois,* 94 U. S. 113; *Ex parte Virginia,* 100 id. 339; *Joseph* v. *Bidwell,* 28 La. An. 375; *United States* v. *Newcomer,* 11 Phila.

[Pa.] 519.) Section 383 of the Penal Code does not infringe upon the United States laws or Constitution, nor does it deprive the owner of his property, or of its use, so as to be obnoxious to the restraints of article 5 of the amendments of the Constitution of the United States, or of section 1, article 1 of the Constitution of this state. (*Franklin* v. *Schermerhorn*, 8 Hun, 112; *Wallack* v. *Mayor, etc.*, 3 id. 84; 67 N. Y. 23; *Bertholf* v. *O'Reilly*, 74 N. Y. 509, 522; *Munn* v. *State of Illinois*, 69 Ill. 80; affirmed, 94 U. S. 113; *Thorpe* v. *R. & B. R. R. Co.*, 27 Vt. 140; *Neuendorff* v. *Duryea*, 69 N. Y. 557; *People* v. *West*, 106 id. 296; *Fire Department* v. *Noble*, 3 E. D. Smith, 452.) No discrimination is permitted or allowed against a citizen by reason of race or color, in the use and enjoyment of certain property of a public or *quasi* public character, by law. Hotels, railroad cars, or other conveyances used by common carriers in their business are made such property, and places of amusements are made such property by the Penal Code. (*Comm.* v. *Duane*, 98 Mass. 1; *Murray's Lessee* v. *Hoboken Land and Imp. Co.*, 18 How. 272; *Ogden* v. *Saunders*, 12 Wheat. 259; *Munn* v. *State of Illinois*, 94 U. S. 113.) Under the general grant of power, the exercise of a legislative power by the state legislature will be presumed constitutional, and will be sustained unless brought clearly within some of the exceptions of the Constitution; an adverse or doubtful construction is not sufficient to condemn an act. (*Gilbert El. R. Co.* v. *Anderson*, 3 Abb. N. C. 434; *Chicago* v. *Smith*, 62 Ill. 268; *Gulman* v. *Iron Co.*, 5 W. Va. 22; *Bertholf* v. *O'Reilly*, 74 N. Y. 509; *People* v. *Huntington*, 4 N. Y. Leg. Obs. 187; *Clarke* v. *City of Rochester*, 24 Barb. 446; *People* v. *West*, 106 N. Y. 295.)

Andrews, J. Section 383 of the Penal Code declares that "no citizen of this state can, by reason of race, color or previous condition of servitude, be excluded from the equal enjoyment of any accommodation, facility or privilege furnished by inn-keepers or common carriers, or by owners,

managers, or lessees of theaters or other places of amusement, by teachers and officers of common schools and public institutions of learning, or by cemetery associations." The violation of this section is made a misdemeanor, punishable by fine of not less than fifty nor more than five hundred dollars.

The defendant and one Scott, in the year 1884, were the owners and proprietors of a skating rink in the village of Norwich, in this state, erected in that year upon their own lands. Prior to June 13, 1884, they announced, through the public press and otherwise, that the rink would be opened on the evening of that day, and they arranged with the "Apollo" club, of Binghamton, to attend the opening to give an exhibition of roller skating, the profits of the entertainment to be divided between the club and the proprietors of the rink. Tickets of admission were sold on the evening in question by the agents of the proprietor, at the office on the premises, but persons who had not procured tickets were admitted on payment of the charge for admission at the door. Several hundred persons attended the exhibition. During the evening three colored men made application to purchase tickets at the office where tickets were sold, but the agents of the proprietors, having charge of the sale, acting in accordance with the instructions of the defendant, refused to sell them tickets because they were persons of color, and they were so informed at the time. The defendant was indicted under the section of the Penal Code above quoted, the indictment alleging, in substance that the defendant, being one of the owners of a skating rink, a place of amusement, did, on the day named, exclude from said skating rink, and from the equal enjoyment of any and all accommodation, facility and privilege of said skating rink, George F. Breed, William Wyckoff, Charles Robbins and others, all being citizens of the state, by reason of race and color, etc. The objection is now taken that the indictment is defective, in substance, in not averring the means by which the exclusion of the persons mentioned was effected. The objection is untenable. The indictment follows the statute, and it was not necessary

to aver, with any greater particularity than was used, the circumstances constituting the offense. (*People* v. *West*, 106 N. Y. 293.) Nor is there any force in the suggestion that proof of a refusal to sell to the colored men tickets of admission at the office did not support the allegation that they were excluded from the rink. The defendant provided tickets as evidence of the right of persons having them to admission. He refused to furnish this evidence to the persons named in the indictment, which was furnished to all others who applied, placing the refusal on a ground which justified the applicants in supposing, and the jury in finding, that the defendant thereby intended to exclude them, and did thereby exclude them, from the rink.

The real question in the case arises upon the contention of the counsel for the appellant that the statute upon which the indictment is founded, so far as it undertakes to prescribe that the owner of a place of amusement shall not exclude therefrom any citizen by reason of race, color or previous condition of servitude, is an unconstitutional interference with private rights, in that it restricts the owner of property in respect to its lawful use, and as to an incident which is not a legitimate matter of regulation by law.

The legislation in question is not without precedent. The act of congress of March 1, 1875, entitled " An act to protect all persons in their civil rights" (18 U. S. Stat. at Large, 335), contains a section identical in import with section 383 of the Penal Code, except that it is still broader in its scope, and secures, not to citizens only, but to all persons within the jurisdiction of the United States, the equal enjoyment of the accommodation, advantages, facilities and privileges of " inns, public conveyances on land and water, theaters and other places of public amusement, subject only to the limitations established by law, and applicable to citizens of every race and color, regardless of any previous condition of servitude." The " Civil Rights Act" of Mississippi, passed February 7, 1873, contains a similar provision. In Louisiana the matter is made the subject of a constitutional enactment, ordaining

that "all persons shall enjoy equal rights and privileges, etc., in every place of public resort;" and this was supplemented by acts of the legislature of Louisiana, passed in 1870 and 1871.

It is not necessary, at this day, to enter into any argument to prove that the clause in the bill of rights that no person shall "be deprived of life, liberty or property without due process of law" (Const., art. 1, § 6), is to have a large and liberal interpretation, and that the fundamental principle of free government, expressed in these words, protects not only life, liberty and property, in a strict and technical sense, against unlawful invasion by the government, in the exertion of governmental power in any of its departments, but also protects every essential incident to the enjoyment of those rights. The interpretation of this time-honored clause has been considered, in recent cases in this court, with a fullness and completeness which leaves nothing to be said by way of support or illustration. (*Wynehamer* v. *People*, 13 N. Y. 378; *Bertholf* v. *O'Reilly*, 74 id. 509; *In re Jacobs*, 98 id. 98; *People* v. *Marx*, 99 id. 377.)

But, as the language of the constitutional prohibition implies, life, liberty and property may be justly affected by law, and the statutes abound in examples of legislation limiting or regulating the use of private property, restraining freedom of personal action or controlling individual conduct, which, by common consent, do not transcend the limitations of the Constitution. This legislation is under what, for lack of a better name, is called the police power of the state, a power incapable of exact definition, but the existence of which is essential to every well-ordered government. By means of this power the legislature exercises a supervision over matters involving the common weal and enforces the observance, by each individual member of society, of the duties which he owes to others and to the community at large. It may be exerted whenever necessary to secure the peace, good order, health, morals and general welfare of the community, and the propriety of its exercise within constitutional limits is purely a matter of legislative discretion with which the courts cannot

interfere. In short, the police power covers a wide range of particular unexpressed powers reserved to the state affecting freedom of action, personal conduct and the use and control of property. "All property," said SHAW, Ch. J., in *Comm.* v. *Alger* (7 Cush. 85), "is held subject to those general regulations which are necessary to the common good and general welfare." This power, of course, is subject to limitations. The line of demarkation between its lawful and unlawful exercise, it is often difficult to trace. We have held that it cannot be exerted for the destruction of property lawfully held and acquired under existing laws, or of any of the essential attributes of such property (*Wynehamer* v. *People, supra*); nor to deprive an individual of the right to pursue a lawful business on his own premises, not injurious to the public health, or otherwise inimical to the public interests (*In re Jacobs, supra*); nor to prevent the manufacture or sale of a useful article of food. (*People* v. *Marx, supra*.) But we have held that the legislature may lawfully subject the owner of premises to pecuniary liability for injuries resulting from intoxication caused in whole or in part by the use of liquor sold by the lessee therein, although the sale itself was lawful (*Bertholf* v. *O'Reilly, supra*); and it was held by the Supreme Court of the United States in *Munn* v. *Illinois* (94 U. S. 113), that a state law regulating the licensing of elevators for the handling and storage of grain, and fixing a maximum charge therefor, was not repugnant to that part of the fourteenth amendment of the Constitution of the United States which ordains that "no state shall deprive any person of life, liberty or property without due process of law."

In considering whether the enactment of section 383 of the Penal Code transcends legislative power, it is important to have in mind the purpose of the enactment. It cannot be doubted that it was enacted with special reference to citizens of African descent, nor is there any doubt that the policy which dictated the legislation was to secure to such persons equal rights with white persons to the facilities furnished by carriers, innkeepers, theaters, schools and places of

public amusement. The race prejudice against persons of color, which had its root, in part at least, in the system of slavery, was by no means extinguished when, by law, the slaves became freemen and citizens. But this great act of justice towards an oppressed and enslaved people imposed upon the nation great responsibilities. They became entitled to all the privileges of citizenship, although the great mass of them were poorly prepared to discharge its obligations. The nation secured the inviolability of the freedom of the colored race and their rights as citizens by the thirteenth, fourteenth and fifteenth amendments of the Constitution of the United States. The fourteenth amendment ordained, among other things, that "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States * * * nor deny to any person within its jurisdiction, the equal protection of the laws." The construction of the fourteenth amendment has come under the consideration of the Supreme Court of the United States in several cases, among others, in two cases known as the jury cases—*Strauder* v. *West Virginia* (100 U. S. 303), and *Ex parte Virginia* (id. 339). In the case first mentioned it was held that a state law confining the selection of jurors to white persons was in contravention of the fourteenth amendment, and in the second, that the action of the state officer invested with the power to select jurors, excluding all colored persons from the lists, was also repugnant to its provisions. In *Strauder* v. *West Virginia*, STRONG, J., speaking for the majority of the court, said: "The words of the amendment, it is true, are prohibitory, but they contain a necessary implication of a positive immunity or right most valuable to the colored men, the right of exemption from unfriendly legislation against them distinctively as colored; exemption from legal discrimination implying inferiority in civil society, lessening the security of their enjoyment of the rights which others enjoy, and discriminations which are steps toward reducing them to the condition of a subject race."

We have referred to these amendments and to the cases

construing them, because they disclose the fact that, in the judgment of the nation, the public welfare required that no state should be permitted to establish by law such a discrimination against persons of color as was made by the defendant in this case, for we think it incontestable, that a State law excluding colored people from admission to places of public amusement would be considered as a violation of the Federal Constitution. It would seem, indeed, in view of the act of March 1, 1875, that, in the opinion of congress, the amendments had a much broader scope, and prevented not only discriminating legislation of this character by the state, but also such discrimination by individuals, since the jurisdiction of congress to pass a law forbidding the exclusion of persons of color from places of public amusement, and annexing a penalty for its violation, must be derived, if it exists, from the thirteenth, fourteenth and fifteenth amendments. It cannot be doubted that before they were adopted the power to enact such a regulation resided exclusively in the states. But, independently of the inference arising from the solemn assertion by the nation, through its action in adopting the amendments, that legal discriminations against persons of color by the action of states was opposed to the public welfare, it is not difficult to see that there is a public interest which justified the enactment of section 385 of the Code, provided it did not overstep the limits of lawful interference with the uses of private property. The members of the African race, born or naturalized in this country, are citizens of the states where they reside and of the United States. Both justice and the public interest concur in a policy which shall elevate them as individuals and relieve them from oppressive or degrading discrimination, and which shall encourage and cultivate a spirit which will make them self-respecting, contented and loyal citizens, and give them a fair chance in the struggle of life, weighted, as they are at best, with so many disadvantages. It is evident that to exclude colored people from places of public resort on account of their race is to fix upon them a brand of inferiority, and tends to fix their position as a servile

and dependent people. It is, of course, impossible to enforce social equality by law. But the law in question simply insures to colored citizens the right to admission, on equal terms with others, to public resorts and to equal enjoyment of privileges of a *quasi* public character.. The law cannot be set aside, because it has no basis in the public interest, and the promotion of the public good is the main purpose for which the police power may be exerted; and whether, in a given case, it shall be exerted or not, the legislature is the sole judge, and a law will not be held invalid because, in the judgment of a court, its enactment was inexpedient or unwise.

The final question, therefore, is, does the law in question invade the right of property protected by the Constitution? The state could not pass a law making the discrimination made by the defendant. The amendments to the Federal Constitution would forbid it. May not the state impose upon individuals having places of public resort the same restriction which the Federal Constitution places upon the state? It is not claimed that that part of the statute giving to colored people equal rights, at the hands of innkeepers and common carriers, is an infraction of the Constitution. But the business of an innkeeper or a common carrier, when conducted by an individual, is a private business, receiving no special privilege or protection from the state. By the common law, innkeepers and common carriers are bound to furnish equal facilities to all, without discrimination, because public policy requires them so to do. The business of conducting a theater or place of public amusement is also a private business in which any one may engage, in the absence of any statute or ordinance. But it has been the practice, which has passed unchallenged, for the legislature to confer upon municipalities the power to regulate by ordinance the licensing of theaters and shows, and to enforce restrictions relating to such places, in the public interest, and no one claims that such statutes are an invasion of the right of liberty or property guaranteed by the Constitution.

The statute in question assumes to regulate the conduct of owners or managers of places of public resort in the respect mentioned. The principle stated by WAITE, Ch. J., in *Munn* v. *Illinois* (*supra*), which received the assent of the majority of the court, applies in this case. "Where," says the chief justice, "one devotes his property to a use in which the public have an interest, he, in effect, grants to the public an interest in that use, and must submit to be controlled by the public for the common good, to the extent of the interest he has thus created." In the judgment of the legislature the public had an interest to prevent race discrimination between citizens, on the part of persons maintaining places of public amusement, and the *quasi* public use to which the owner of such a place devoted his property, gives the legislature a right to interfere. If the defendant, instead of basing his exclusion of a class of citizens upon color, had made a rule excluding all Germans, or all Irishmen, or all Jews, the law as applied to such a case would have seemed entirely reasonable. (*United States* v. *Newcombe* [U. S. Dist. Ct.] 4 Phila. 519.) But the principle is the same, and if the law could be sustained in the one case, it may in the other. The validity of similar statutes in Mississippi and Louisiana has been sustained by the courts in those states. (*Donnell* v. *The State*, 48 Miss. 661; *Joseph* v. *Bidwell*, 28 La. 382.) The statute does not interfere with private entertainments or prevent persons not engaged in the business of keeping a place of public amusement, from regulating admission to social, public or private entertainments given by them as they may deem best, nor does it seek to compel social equality. It was, we think, a valid exercise of the police power of the state over a subject within the cognizance of the legislature.

The judgment should be affirmed.

All concur, except PECKHAM and GRAY, JJ., dissenting; RUGER, Ch. J., concurring in result.

Judgment affirmed.