(Franklin County Court of Common Pleas.)

### THE STATE OF OHIO v. MAY SOMERVILLE ET AL.

1. The statute called the "Winn law," is not unconstitutional even against the owners of a house of ill-fame

2. A petition which does not aver that the owner knew the house was one of ill-fame, and that intoxicating liquors were being sold in it, is not obnoxious to a demurrer.

3. But if the owner proves that he did not know the house was used for purposes of prostitution, it is a good defense.

(Decided June, 1895.)

PUGH, J..

This action, and nineteen others, almost exactly like it, were brought under the right conferred by what is called the Winn Law. (91 Laws of Ohio, 300.)

The same questions were mooted in all of them.

The defendants belong to one or both of two classes of people,—keepers of houses of ill-fame, and the owners of such houses and of the lots on which they were located.

The cause of action against the first is that they sold intoxicating liquors in the houses of ill-fame of which they were the keepers; the recovery sought is the penalty of $350.00 for each alleged sale.

The cause of action against the other class is the lien which the law fastens upon their buildings and lots, if the sales were made there.

By both classes of defendants the constitutionality of the statute is controverted.

In the case against Vonnie Weston and Kate McMahon, this same question was agitated in favor of Vonnie Weston, the alleged proprietress of a house of ill-fame, and the decision, by this branch of the court, was adverse to her contention.

The opinion in which reasons were given for that conclusion is on file. It is unnecessary to reiterate those reasons in these cases.

The demurrers of all of the defendants in the other nineteen cases who belong to the same class are overruled.

By the defendants belonging to the other tpye, the property owners, it is contended, (1) that the statute is unconstitutional, and (2) that the petitions against them are defective, stating no cause of action against them.

In truth, only one reason was assigned for these contentions, and it was the same for both, namely, the absence from the statute of a provision that the knowledge of the owners that intoxicating liquors were sold in their houses should constitute an essential element of the causes of action against them.

But the questions raised by these contentions are essentially independent. The statute may not be void for this reason, and yet the petitions may be defective for not alleging that knowledge.

Germane to the discussion of these two questions, though not to their decision, is another question. It is whether the defendants, the owners, can, on the trials prove their lack of knowledge, hereinafter explained, as a defense?

There were some other considerations besides the two mentioned, but they were not made to rest upon any definite principle or conception.

For instance, it was said that the statute exceeded the constitutional limitation that "no conviction shall work a forfeiture of one's estate," Miller and Gibson v. The State, 3 Ohio St., 488, being cited to support this view.

But it is obvious that these are not criminal cases in which the con-viction of the owners of the property for some crime is one of the objects. The line of demarkation between actions for a penalty or forfeiture which are civil actions externally, but criminal in reality, and actions for a like object, which are of a purely civil nature, is plain and unmis-takable.

If the judgment of forfeiture necessarily carries with it, and as a part of the sentence, a conviction and judgment against the person for the crime committed, the proceeding is one of a criminal character. But where the proceeding does not involve the personal conviction of the wrong-doer for the offense charged, the remedy is plainly one of a civil nature.   1 Bishop's Crim. Law.   (Ed.; Sec.)

The statute in question does not provide for a forfeiture at all; but even if it did, the remedy under this statute would be deemed civil in its character, because the judgment which may be rendered against the own-ers of the property, will not necessarily carry with it, and as part of the sentence, a conviction of them for the crime of selling intoxicating liquor. Against the sellers or donors of the liquor such a conviction would neces-sarily be carried by the judgment; but this is not true, I repeat, of the owners of the houses and lots.

Again, it was said that the constitutional restraints, (1) that persons accused of crime shall be entitled to a speedy trial by an impartial jury, and (2), they shall not be coerced onto being witnesses against themselves, are profaned by this statute.

I confess that I have not sufficient mind to comprehend the mental process by which one could reach such a conclusion.   It may be so deep that shallowness cannot see it.

A jury trial these defendants will have, and the jury will be as im-partial as the nature of men can make them.

The petitions do not accuse this class of defendants of having com-mitted crimes; these cases are not to be tried upon indictments preferred by a grand jury.

The decision in Miller & Gibson v. The State, supra, is no guide for the decision of these cases.   That was a criminal case in which considera-tions were involved that are radically different from those which affect these cases.

The want of parallelism and even of anology between them is obvious.

Unless a correct conception of the power which authorized the passage of this statute is obtained, its meaning will be misunderstood.

Its enactment was an exertion of the police power of the legislature.

Since the decisions were rendered in Miller & Gibson v. The State, supra, and in Birney v. The State, 8 Ohio, 230, the evolution of the police power has reached a stage not then foreseen or prophecied.   Its limits have not yet been reached.   Its growth is only subject to express, or clearly implied, constitutional restraints and limitations.

The rule is quite institutional that all kinds of property are held by the owners thereof, subject to the implied obligation, that its use shall not be injurious to the community.   People v. Budd, 143 U. S., 517; People v. King, 110 N. Y., 418; People v. West, 106 N. Y., 293; Railway v. R. R., 30 Ohio St., 604; State v. Gas Company, 34 Ohio St., 572.

The police power of the state to prohibit or punish the use of property which would be prejudicial to the health, morals and safety of its people, and even to destroy it for that reason, is part of the A. B. C. of the law.

The use of property to increase crime and pauperism may be thus prohibited or punished.

Even the most harmless property in its nature is subject to the exer-cise of this power.

Unless the restrictions be set down in the written constitutions, the government of the United States and of the several states in their respective spheres, in the exercise of their police power, may prescribe whatever rules they will for the conduct of persons and the use of their property: Bishop's Non-Contract Law, Sec. —; Mugler v. Kansas, 123 U. S., 623, 665; Fertilizing Co. v. Hyde Park, 97 U. S., 659; Wurts v. Hoagland, 114 U. S., 606; Brunbill v. Randall, 102 Ind., 528; Keyes v. Snyder, 15 Kan., 143.

That the power may be, or is actually, employed to destroy the value of the property without compensation to the owner does not render its exercise obnoxious to constitutional objection. Cooley's Const. Limitations, 721; Mugler v. Kansas, 123 U. S., 623.

There is no sacredness in the right of property.

There is a conceded difference between the destruction of property which is, per se, a public nuisance, because it is injurious to public health, or its destruction, because it is injurious to the public morals, and the taking of private property for public use, or depriving the owner of its use without due process of law.

Again, there is a fundamental difference between a claim of right to use, or cause to be used, property for a lawful purpose, and a claim of right to use, or allow to be used, property for an unlawful purpose.

Laws which ordained the abatement or destruction of property used for forbidden purposes, because they were a public nuisance, such as breweries and distilleries, have been frequently upheld as constitutionally competent legislation.

The seizure and forfeiture of the real estate upon which the distilleries were situated, belonging to the landlord of the tenant distiller, and used in connection with it to facilitate the operation of the distilleries, and which was "conducive to that end as the means of ingress and egress," have been sanctioned by courts, even where the landlord had no knowledge of such use by his tenant.

By the second section of the statute in question, the sale and gift of intoxicating liquor in a house of ill-fame is made unlawful; but the offender is not obnoxious to criminal indictment. The remedy sounds in a penalty, which is recoverable in a civil action.

The judgment for it is impressed upon the house and lot in and on which the law is violated, as a lien.

Thus the statute impliedly prohibits the use of the house and lot to subserve the forbidden purposes. Clearly, the legislature deemed such use injurious to the public morals and safety.

The statute does not interfere with the lawful use of the houses and lots. It does not restrict their lawful use.

Returning to the sub-topic of forfeiture, at common law, forfeiture did not, in many cases of felony, attach, when the proceeding was in rem until the defendant was convicted of the felony. But this rigid rule did not apply to seizures and forfeitures created by statute in rem, cognizable on the revenue side of the exchequer court, because the offense attached primarily to the thing which was used to violate the law.

The Winn Law is, in one aspect of it, a revenue measure, for two-thirds of the penalty goes into the county treasury. The same principles which were controlling in revenue cases at common law, might, it seems to me, be applicable to these cases, because the statute is a revenue measure.

The offense, the wrong, of the seller or donor of the liquor, attaches primarily to the house and lot in and on which the sale or gift is made.

Considering the statute as a revenue measure, and applying the com-

mon law principles, the extremest view that could be adopted, or which would be sustainable by the authorities, would be that the personal misconduct or responsibility of the property owner would be immaterial, "beyond what necessarily arises from the fact that he let and suffered the property to be used or occupied" for a house of ill-fame.

Presumed to know that the law forbids the sale or gift of liquor in such a house, he would have to submit to even a forfeiture of the property, if that were enacted, which the law denounced against, and attached to, the property by means of the unlawful conduct of him who is authorized to use the property as a house of ill-fame by the owner.

It might be affirmed that this is a necessity, being the only adequate means of suppressing the offense or wrong.

I repeat that the most extreme view which should be adopted in favor of the owners of the houses and lots, would be that the plaintiff should prove that they knew that the houses were used for houses of ill-fame.

Proof of that fact being made, the owners of the houses and lots would be legally bound by the unlawful acts of the ocupants just as if they had been committed by themselves.

For instruction on this subject, I am much indebted to the opinion of Judge Clifford in Dobbins v. The United States, 96 U. S. 395.

The statute under which that case was tried, was a statute which Congress passed in the exercise of its police power.

But I am not prepared to conclude that even this view should be adopted.

Knowledge is an element of the intention.    Bishop's Non-Contract Law, Sec. 502.

In criminal jurisprudence that which is not the "outflow of a criminal mind," of a criminal intention, cannot constitute a crime.    Id., sec. 496.

This inflexible rule made the decisions in Miller & Gibson v. The State, supra, and in Birney v. The State, supra, sound.    When statutes, which create new crimes, omit making an evil intent the essence of the crime, this rule becomes a part of the new statute in spite of that, by reason of a controlling rule for the intrepretation of statutes.

But is there not a distinction between different classes of criminal cases?    In a recent case (State v. Tomasi, 31 Atlantic Reporter, page 780), that view seems to have been adopted.    The court seemed to go still further than that in its decision.    It said: "The rule in most instances seems to be this: If, to constitute an offense, knowledge of certain facts is essential, it must invariably be shown that the respondent has such knowledge; but if a statute makes an act penal, without reference to knowledge, it is then unnecessary to show it, and ignorance of the fact is no defense.    The rule may be stated in other words, thus: If a statute commands that an act be done or omitted, which, in the absence of the statute would be blameless, ignorance of the fact or state of things contemplated by the statute will not excuse its violation."

The court used for an illustration the case of Reg. v. Woodrow, 15 Mees. & W., 404.    In that case the cause of action was that the defendant had in his possession adulterated tobacco, and the defense was that he purchased it as genuine and had no knowledge or cause to suspect that it was not genuine.    His counsel made an argument similar to the one that was made in these cases by defendants' counsel, and he urged that the defendant, to ascertain the character of the tobacco, would have been required to have a nice chemical analysis made.    Baron Park interrupted by saying: "You must get some one to make that nice chemical analysis, or you must rely upon the manufacturer or dealer who sells to you and take your remedy against him."

In actions for civil wrongs, there is no such "universal rule requiring

or not requiring" an evil intent in the doer to authorize a recovery against him. Bishop's Non-Contract Law, Sec. 497.

It is enough to say that, "to make some of them actionable, the law requires one or another form of evil intent in the doer, according to the nature of the particular case." * * * * * * "There are other forms of civil wrong wherein the intent, whether good or evil, is of no legal consequence; if any act of the defendant, whatever its moral quality, has resulted in the injury, he must make compensation." Id., Sec. 496.

The Winn law does not require that the evil intent, the knowledge, of the owner of the house used for prostitution, and of the lot on which it is located, shall constitute an essential element of the wrong for whose consequences he is made liable in the indirect way set down in the statute.

I allude to the knowledge that the house was used for prostitution, not to knowledge that intoxicating liquors were sold, either generally, or to the particular persons, upon which the suits were brought.

I am very sure that the latter kind of knowledge does not have to be alleged or proved.

But is there any common law rule which, expanding the statute, makes the existence of the former kind of knowledge essential to a recovery?

No authority has been cited to prove that proposition; and in the limited time for examination, the cases not having reached me till three days ago, I have not entirely satisfied myself on this question.

It would be sufficient to decide these demurrers, as they have been argued, and to conclude, as I do, that the statute is manifestly not unconstitutional, merely because it omits to make the owner's knowledge of the fact that the house was used for prostitution, an indispensable fact to authorize a judgment against him by which a lien for the recovered penalty is fastened upon his house and lot.

Enacted in the exercise of the police power, this statute does not contravene any restriction of the organic law.

Upon the second question, whether the petitions should allege that the owners had knowledge of the fact that the houses were being used for prostitution at the time the sales were made, at present, I am in some doubt.

The statute does not place the burden of alleging and proving it, upon the plaintiff.

In the criminal cases where this question was decided, some of the statutes under which they were decided made it incumbent upon the state to allege and prove the scienter; others contained no such requirement, but the burden was, notwithstanding that omissoin in the statute, imposed upon the state, because the common law rule, which was left untouched by the statute, required it.

But, as has been said, no authority has been found which authorizes the inference that there is an analogous rule that exacts that duty of the plaintiff in a civil action for a wrong.

For the present, therefore, the decision is that this duty does not rest upon the plaintiffs in these actions.

The statute does not declare that the lack of knowledge in the owner of the house and lot, that the house was being used for prostitution purposes, at the time the sales of liquor were made, should not constitute a sufficient defense in these actions.

Upon the authority to which I have adverted, although it is not necessary to decide the question now, the conclusion is that that fact, if proved on the trial, would defeat these actions.

A sense of justice would not sustain the opposite conclusion.

Demurrers of property owners overruled.

*C. T. Clark*, for plaintiff; *G. D. Jones*, for defendant.