(114 App. Div. 578)

PEOPLE ex rel. BURNHAM v. FLYNN, Warden, et al.

(Supreme Court, Appellate Division, First Department. July 12, 1906.)

CONSPIRACY—INJURING PERSON IN BUSINESS.

Pen. Code, § 168, subd. 5, makes it a misdemeanor for persons to conspire to prevent another from exercising a lawful trade or calling or doing any other lawful act by force, etc., and section 171 provides that no agreement, except to commit a felony, amounts to a conspiracy, unless some act besides the agreement be done to effect the object. *Held*, that an agreement among managers of theaters to refuse admission to a theatrical critic, and his forcible exclusion from the theaters of such parties, did not amount to a conspiracy to do an unlawful act, where the agreement was not made for the purpose of preventing him from exercising his lawful calling as a critic, but the motive was merely a dislike and disapproval of the critic's writings.

Patterson, J., dissenting.

Appeal from Special Term, New York County.

Habeas corpus by the people, on the relation of Charles Burnham, against William Flynn, as warden, to obtain relator's release from custody on a charge of criminal conspiracy. From an order (99 N. Y. Supp. 198) dismissing the writ, and remanding relator to custody, he appeals. Reversed. Writ reinstated, and relator discharged.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, LAUGHLIN, and HOUGHTON, JJ.

H. Aaron, for appellant.

William Travers Jerome, Dist. Atty. (James W. Osborne, of counsel), for respondents.

HOUGHTON, J. The relator is the manager of a theater and a member of the "Theater Managers' Association" of the city of New York. The complainant, James S. Metcalf, is a dramatic critic and writer, and he charges the relator and other theater managers with entering into a criminal conspiracy to prevent him from exercising his lawful calling of critic, by entering into an agreement to exclude him from the theaters managed by them, and by the carrying out of such agreement, and forcibly preventing him from entering after he had purchased a ticket of admission. At a meeting of the Theater Managers Association, held on the 12th day of January, 1905, the relator presented a written statement or resolution setting forth the fact that a certain writer, who was understood to be the complainant, had persistently for years, and without just cause, libeled a large number of theater goers, and attacked the personal integrity of members of the association, and had particularly made unjustifiable attacks upon the religious faith of certain members; and while criticisms on plays or business matters were not complained of, it was said that, when a butt is made of one's religion, whatever his faith might be, some action should be taken by the members of the association, showing confidence in those assailed, and some steps taken to prevent the general business interests of the managers being injured. This resolution was adopted, and by a further vote it was agreed not to admit the complainant to theaters under the management of a large number of the members. Immediately thereafter some of the managers gave instructions not to admit the complainant to their theaters, and upon purchasing tickets to certain performances complainant was refused admission, and upon his protesting his progress was blocked by the attendants, and his money tendered back to him. It does not appear that the relator gave such instructions or refused admission to the complainant, but he was a party to the original agreement with others who did. While no serious force was used in preventing the complainant from entering the theaters, such as was used amounted to legal force.

It is claimed that the act of relator in entering into an agreement with other members of the association not to admit the complainant to the various theaters under their control, and the overt acts of various parties to that agreement in giving instructions not to admit him, and in forcibly preventing him from entering after he had purchased a

ticket, constituted the crime of criminal conspiracy, as defined by subdivision 5 of section 168 of the Penal Code, which provides as follows:

"If two or more persons conspire; * * * (5) to prevent another from exercising a lawful trade or calling, or doing any other lawful act, by force, threats, intimidation, or by interfering or threatening to interfere with tools, implements or property belonging to or used by another, or with the use or employment thereof * * *; each of them is guilty of a misdemeanor."

By section 171 following it is provided that no agreement except to commit a felony amounts to a conspiracy, unless some act besides such agreement be done to effect the object by one or more of the parties to the agreement.

Assuming that the occupation of critic is a trade or calling, and that the agreement made by the relator with other members of the association, and the overt acts on the part of some of them carrying it into effect, come within the letter of the law above quoted, whether or not a crime was committed depends upon whether the agreement was a corrupt and unlawful one, and whether the acts employed to carry it out, by excluding the complainant from various theaters, were also unlawful. To constitute the crime of conspiracy there must be a corrupt agreement between two or more individuals entered into with a criminal intent to do an unlawful act, and this agreement, except one to commit a felony, must be followed by the doing of such unlawful acts. People v. Flack, 125 N. Y. 324, 26 N. E. 267, 11 L. R. A. 807.

If the various theater managers had the right to refuse admission to the complainant to their theaters, an agreement to do so and the subsequent preventing of him from entering them was not unlawful unless such agreement was entered into, not to protect their own interests, or to please their own fancies, but for the sole purpose of injuring the business and calling of the complainant. The rights of theater managers and theater goers have been recently considered by the Court of Appeals in Collister v. Hayman, 183 N. Y. 250, 76 N. E. 20, and was there held that the conducting of a theater is a private business, which the proprietor can open or close at will, admitting as many as he sees fit, and charging what he may choose. The particular matter under consideration in that case was the right of one who purchased from a speculator a limited ticket. In the course of the opinion the court says:

"They [theater managers] can make it a part of the contract and a condition of admission, by giving due notice and printing the condition in the ticket, that no one shall be admitted under twenty-one years of age, or that men only or women only shall be admitted, or that a woman cannot enter unless she is accompanied by a male escort, and the like."

The contract right to enter, as evidenced by the ticket, and its breach, or the giving of due notice under what conditions the ticket will be good, of course are mere civil matters relating to the contract itself. Taking the holding of the court of last resort, therefore, in its broad sense, the manager and proprietor of a theater has the right to say who shall enter his place of entertainment, and who shall not, or what class of people shall be entitled to do so and what class shall not. This necessarily follows from the fact that his enterprise is a private one and not public, and because, while he may entertain the public

at large if he sees fit, he is under no obligation to do so. His rights and duties are not like those of carriers of passengers, for example, who have public franchises, and are under obligation to give public service.

The relator and his associates did not, therefore, enter into an unlawful agreement when they agreed among themselves that the complainant should not be admitted to the various theaters managed by them. If they disliked his presence, or thought his attendance was injurious to their business, they could agree that he should not be permitted to attend. If he attempted to do so, their place of amusement being their own, and being a private place, so far as any individual or the public was concerned, they had a right, by such reasonable force as was necessary, to prevent him from entering. Their acts, therefore, in so preventing him were not unlawful acts. In People v. Kostka, 4 N. Y. Cr. R. 429, relied upon by the respondents, the overt acts which the defendants committed were unlawful and intimidating and threatening. Any number of men may combine to do a lawful act, and such combination does not subject them to either civil or criminal liability. National Protective Association v. Cumming, 170 N. Y. 315, 63 N. E. 369, 58 L. R. A. 135, 88 Am. St. Rep. 648.

It only remains to be considered whether or not the agreement entered into was actuated by the sole motive of preventing the complainant from exercising his lawful calling of critic. The resolution negatives any such idea, and there is no evidence from which it can be assumed that such was the motive of the agreement, or that such a motive actuated the subsequent acts of excluding him. The resolution dwells particularly upon the fact that complainant had been unfair in his attacks upon certain members of the association, and it is especially stated that no mention is made of criticisms on plays or business matters. Whether these attacks had been made or not, and whether they were justified or unjustified, is immaterial. If the members of the association thought they were unfair or disliked them, and desired for that reason alone that the complainant should not attend the various entertainments provided by them, they had a right to agree to exclude him, and to carry out that agreement by refusing to admit him. It cannot be said that their sole motive in doing what they did was to prevent the complainant from exercising his lawful calling of critic. On the contrary, what was done appears to have been actuated by an unfounded or well-founded dislike of complainant and disapproval of his writings. The wisdom of the acts or the propriety or seemliness or unseemliness does not concern us. The only question to be determined is whether the acts were unlawful, and our conclusion is that the facts disclosed do not constitute the crime of conspiracy, and that the relator should have been discharged.

The order dismissing the writ of habeas corpus should be reversed, and the writ reinstated, and the relator discharged from custody. All concur, except PATTERSON, J., who dissents.