## CITY MAGISTRATES' COURT.

### January, 1919.

## THE PEOPLE ex rel. EUGENE McINTOSH v. FRANK STILLMAN, Manager, etc.

(N. Y. Law Journal, Vol. LX., No. 116.)

RACE DISCRIMINATION—EXCLUSION OF NEGRO FROM USE OF SWIMMING POOL IN A PARK IS NOT A VIOLATION OF SECTION 514, PENAL LAW.

Under the phrases ''or other places of amusement'' and ''or other places of public resort or amusement'' a swimming pool is not *ejusdem generis* of the specifically enumerated places preceding these phrases in section 514 of the Penal Law, and therefore such a place is not within the present provisions of that section.

*Hon. Francis Martin,* District Attorney, Bronx county (*Herman J. Fliederbluhm* of counsel), for People.

*Messrs. Glaze & Fine* (*Samuel Fine* of counsel), for defendant.

GEORGE W. SIMPSON, Magistrate:

A summons has issued to G. Frank Stillman, manager of the International Exposition, stating thereon "that you did commit the offense of violation of section 514 of the Penal Law — race discrimination." The essential facts are undisputed. The complainant McIntosh, a colored man, employed in the office of the district attorney of Bronx county, accompanied by two white men, police officers Peyton and McLaughlin, in civilian clothes, presented themselves on September 10, 1918, at a place called The Bronx Exposition Park; they each paid ten cents to a woman in charge of a booth at the entrance and were admitted to the park. The complainant McIntosh then

proceeded to another booth where, as he testified, there was a sign, " Swimming pool — fifty cents weeks days, seventy-five cents holidays and Sundays." McIntosh placed a dollar bill in front of the woman ticket seller at the booth and asked for a ticket to the swimming pool. This woman told McIntosh he would have to belong to the club. McIntosh asked how he could join the club and expressed a desire to do so. The woman told him to see Mr. Stillman, the manager. While McIntosh stood there three white men bought tickets and passed into the said pool and nothing was said to them about a club or membership. McIntosh went back to the main gate accompanied by Peyton and there sought to purchase a ticket for the pool, but was refused and told that he would have to belong to a club and was referred to defendant Stillman. McIntosh then sought out Stillman and expressed his willingness to join the club and offered a dollar bill for a ticket to the pool. Stillman told McIntosh he would have to make a written application and get three members of the club to indorse the same. McIntosh asked who the members were, and he was told he would have to find out. Then Stillman handed McIntosh the former's card and McIntosh left the park. McIntosh's visit to the park was prompted by information that colored men were being barred from the park as well as from the pool.

The Bronx Exposition, Incorporated, which controls the park itself, granted a concession, or made a lease, of the bath houses and swimming pool in the park to the Bronx Aquatic & Recreation Club, a membership corporation, incorporated in August, 1918. The woman at the booth acted with the authority and on behalf of this lessee or concessionaire.

The People contend that the Bronx International Exposition Park, of which the defendant Stillman was manager on September 10, 1918, including the part thereof devoted to bath houses and swimming pool, are places of amusement within the terms of section 514 of the Penal Law, and that the fore-

going evidence established *prima facie* a violation of said section. They found this contention on the phrases " or other places of amusement," and " or other place of public resort or amusement," in said section. They further contend that the social club or membership corporation sought to be availed of by the defendant is a mere device or subterfuge, and futile to accomplish a frustrating of the purpose of section 514.

The defendant contends that a swimming pool does not come expressly or by implication within the language of section 514, and that in any event the use of the swimming pool can be lawfully restricted to members of the social club hereinbefore mentioned.

These contentions involve the applicability and effect of the rule *ejusdem generis* to the criminal statute.

A comparison of the provisions of section 514 of the Penal Law with section 40 of the Civil Rights Act illumines helpfully the problem of arriving at an accurate construction of section 514, since both concern themselves with the same subject in general. Both these sections were the subject of amendment by the Legislature of 1918. The only change, however, made in section 514 was by the insertion in the first subdivision thereof the italicized words " creed " and " public employment," so that it now reads:

" Section 514: Protecting civil and public rights. A person who:

" 1. Excludes a citizen of this State by reason of race, color, *creed* or previous condition of servitude from any *public employment* or from the equal enjoyment of any accommodations, facility or privilege furnished by innkeepers or common carriers, or by the owners, managers or lessees of theatres or other places of amusement, or by teachers and officers of common schools and public institutions of learning, or by cemetery associations; or

" 2. Denies or aids or incites another to deny to any per-

son because of race, creed or color, full enjoyment of any of the accommodations, advantages, facilities or privileges of any hotel, inn, tavern, restaurant, public conveyance on land or water, theatre or other place of public resort or amusement,

"Is guilty of a misdemeanor punishable by fine of not less than fifty dollars or more than five hundred dollars."

It is also to be noted that the specification preceding the phrases, "other places of amusement," and "other place of public resort or amusement," were not changed or in any manner amplified.

On the contrary, the same Legislature of 1918 amended section 40 of the Civil Rights Law by adding saloons, ice cream parlors, skating rinks, amusement and recreation parks, and other specifically named places, to the enumeration of places covered by that act. As a result the Civil Rights Act is immeasurably broader in its scope than is the Penal Law section with which we are concerned. Furthermore, the Legislature while thus engaged in amending these two separate statutes relating to the same subject refrained from putting amusement parks in the enumeration in the Penal Law, although it put them in the Civil Rights Act. The Legislature manifested a clear intention to give a civil remedy in connection with exclusion from many places, but it did not in identical, precise, express terms, make a criminal offense of excluding from certain of these enumerated places.

Does a swimming pool by necessary implication come within the phrases "other place of public resort or amusement" and "or other place of amusement," when they are preceded by enumerations of places that do not contain a specification of a swimming pool or an amusement park within which such a pool is located?

In Burks v. Basso (180 N. Y. 341, bootblack case) it was said: "It is a canon of statutory construction that purely statutory offenses cannot be established by implication and that

acts in and of themselves innocent and lawful cannot be held to be criminal *unless there is a clear and unequivocal expression of the legislative intent to make them such* (People v. Phyfe, 136 N. Y. 554)," and it was there held that a bootblack stand did not come within the phrase, " and all other places of public accommodation," which followed specific enumeration of certain places, among which was a barber shop, which it was contended was sufficiently like unto a bootblack stand to bring the bootblack stand within the general phrase. To like effect are People v. King (110 N. Y. 418, skating rink), and Gibbs v. Arras Bros. (222 N. Y. 332, saloon).

Johnson v. Auburn, etc., R. R. (222 N. Y. 443, amusement park) is not to the contrary, and follows People v. King and Gibbs v. Arras (*supra*). There, the Court of Appeals placed its decision squarely upon the ground that the amusement park in question, with its attractions, *" under the particular circumstances disclosed,* * * * was a place of public accommodation. * * * The defendant, in its business as a public service corporation, comes within the *express language* of the statute so far as it maintains a ' *public conveyance* on land or water.' The park * * * *was not maintained as an independent business,* but as an auxiliary to the defendant's passenger business * * * ."  That is, the park was a place of public amusement because the railroad operating it was a public franchise corporation and maintained it as a part of or auxiliary to a " public conveyance on land," which public conveyances are *expressly* enumerated in section 40 of the Civil Rights Act. This distinguishes it from an amusement park operated by a private corporation, or, in the language of the Johnson case (*supra*), " as an independent business," as was the park herein.

All of these cases arose under the Civil Rights Act, a penalty statute, and the rule of strict construction adopted therein is more urgently required under a Penal Law section relating to the same general subject.

The federal cases on the subject are in harmony with the foregoing. In United States v. Bevans (3 Wheat. 336, 390) it was held that the phrase " any other place," following an enumeration of " any fort, arsenal or dockyard " over which the federal courts were to have jurisdiction of offenses committed, did not give jurisdiction of an offense committed on board a ship of war lying in Boston Harbor, and the same statute was held not to cover a place ceded to the United States as a home for disabled volunteers (In re Kelly, 71 Fed. Rep. 545, 550).

And Jones v. Gibson (1 N. H. 266, 272) holds that the phrase " or other place," following an enumeration that " any ship, vessel, dwelling house, store, building " may not be subjected to search without a magistrate's warrant, could not be extended to places other than those enumerated in the act. To the same effect is Rhono v. Loomis (74 Minn. 200).

It is of vital importance that a penal statute should not be enlarged beyond the reasonable intendment of its language by judicial construction. The division of government between the legislative, executive and judicial departments should be jealously maintained. If a swimming pool such as is involved in this case is to be made available to the complainant under pain of making the refusal a crime — a misdemeanor (and the Legislature may deem it to be sound and wise public policy to so declare), it is the function and duty of the Legislature to so explicitly state. There is nothing more imperatively necessary in penal statute than certainty and definiteness and aptness in legislative expression, indicating clearly what acts are inhibited or commanded. Strict adherence to this principle in its application to the criminal statutes is of far greater value to all people, both colored and white, than would complainant's prevailing in a given case in violation of it — especially where at least one and possibly two methods are open to reach the condition by which the complainant is aggrieved.

Here there is absent that clear and unequivocal expression of legislative intent referred to in Burke v. Basso (*supra*),. which alone would warrant holding a swimming pool to be within the Penal Law section, and this absence a clear expression of legislative intent has added significance when we recall that this section and the corresponding Civil Rights Act were the subject of legislative amendment at the same 1918 session and in one " amusement parks " was inserted, and in the other they were left out, and in neither were " swimming pools " enumerated.

The authorities cited, and especially those under the Civil Rights Act, when considered in connection with the narrower enumeration in the Penal Law section, impel me to the holding that the rule of *ejusdem generis* applies here and inure to defendant's benefit.

Accordingly, I conclude that under the phrases " or other places of amusement," and " or other place of public resort or amusement," a swimming pool is not *ejusdem generis* of the specifically enumerated places preceding these phrases in section 514 of the Penal Law, and therefore such a place is not within the present provisions of that section.

This conclusion makes unnecessary passing upon whether the fact that the swimming pool is under the control of a social club or membership corporation precludes section 514 having any application.    I, at present, feel that if the provisions of section 514 were sufficiently broad to include a swimming pool that the social club arrangement might well be deemed a device or subterfuge which should be disregarded.

The complainant herein has mistaken his remedy.    If he has one, it is under the Civil Rights Act, with its broader scope and more exhaustive enumeration of places, or an appeal to the Legislature.

This prosecution is directed against the individual Stillman and not against the ticket seller, the Exposition Company, or

the Aquatic Club. There is no evidence that Stillman excluded or aided or abetted in the exclusion of McIntosh from any place under his control as an individual.

It was stipulated herein that the testimony taken on the return day of the summons should stand as the testimony in the event a complaint should be ordered.

There being no violation of section 514 of the Penal Law, no complaint is ordered, and, accordingly, the summons is dismissed.

## NOTE ON SECTION 514, PENAL LAW.
### RACE DISCRIMINATION.

Section 514 is a valid exercise of the police power of the State and not an unconstitutional interference with private rights because of the fact that it restricts the owner of property in respect to its lawful use. (People v. King, 110 N. Y. 418.)

Where it is shown that agents of the owner of a rink refused to sell to colored men tickets of admission to a performance given in the rink, there is sufficient proof of an exclusion to constitute a violation of this section. (Id.)

A theatre manager, who derives no authority from the State to conduct his business, may exclude whoever he sees fit from his theatre, provided such discrimination is not on account of race, colored or previous condition of servitude. (People v. Flynn, 189 N. Y. 180, affg. 114 App. Div. 578.)

But an exclusion of a person from a theatre because of his color is a violation of section 514, as the duty is imposed upon a theatre manager to grant to a colored person the same privileges as are granted to all other persons. (Stay v. Du Bois, 74 Hun, 134.)

Likewise the proprietor of a place of amusement has no right to exclude a negro, who is properly conducting himself, from the privileges of his establishment because of his race or color, and such an exclusion constitutes a violation of section 514. (Cremore v. Huber, 18 App. Div. 231.)

Section 514 does not deprive a school board of the right of establishing separate schools for the education of colored children, as the board has the right to determine where the children shall be educated and may provide separate buildings for different races so long as equal facilities are provided each. (People v. Queens School Board, 161 N. Y. 598.) ·