THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* GEORGE W. WILLSON, Appellant.

It is not necessary to state in an indictment when and where the court was held at which the indictment was found, the name of the justice who held it, or the names of the grand jurors. A compliance with the provisions of the Code of Criminal Procedure (§§ 273, 275, 276), prescribing the form of the indictment, is all that is requisite.

Where an indictment contains several counts, all charging murder in the first degree, varying only in the statement of the means used to effect the death and the manner in which it was accomplished, a refusal to compel the prosecution to elect which count he will rely upon is not error. (Code of Crim. Pro. §§ 278, 279.)

Upon the trial of such an indictment, several persons called as jurors, upon examination as to their qualifications, testified that they had read newspaper accounts of the murder; had heard the same talked about, and had some opinion or impression as to the guilt of defendant which might take testimony to remove, but each testified that he believed such opinion or impression would not influence their verdict, and that he could render an impartial verdict according to the evidence. The court overruled defendant's challenge and allowed said persons to sit as jurors. *Held,* no error. (Code of Crim. Pro. § 376.)

Several others called as jurors testified that they had read the evidence taken on the coroner's inquest upon the body of the deceased. These were excluded. *Held,* that this could not be complained of as error by defendant.

The defendant was charged with the murder of his wife. The prosecution was permitted to show that the step-father of the deceased had made a will giving his property to defendant and his wife, and after their death to their heirs, and had made the contents of the will known to defendant, but that the testator, on hearing that defendant had left his wife and gone away with another woman, destroyed his will. The prosecution then attempted to show that defendant was informed of the destruction of the will but failed, whereupon, on motion of defendant's counsel, the evidence as to the will was stricken out. *Held,* that if there was any error in the reception of the evidence, it was cured.

The prosecution was permitted to prove, by the overseer of the poor of the town where defendant lived, that at a time when he had abandoned his wife and went away with another woman the witness furnished defendant's family aid and assistance. The trial court denied a motion to strike out this evidence. *Held*, no error.

The crime was charged to have been committed by suffocation. On examination of the body after death two cuts through the under lip were found, which it was conceded were made by two of the lower teeth. On the part of the prosecution it was claimed that these cuts were made by pressure upon the lower lip while defendant was smothering her; on the part of the defense it was claimed they might have been made by herself while in a spasm. A physician called by the prosecution was permitted to testify, as an expert, that in his opinion the cuts could not have been made without " some mechanical cause," *i. e.*, some cause outside of and other than the deceased herself. *Held*, no error; that it was a proper subject for expert evidence.

Two physicians, S. and L., made the autopsy upon the body. S. did most of the cutting. He was not called as a witness. L. was called for the prosecution and testified as to what was done at the autopsy. Among other things, he was permitted to testify that he saw S. introduce his finger into the trachea and up into the larynx and glottis. This was offered for the purpose of showing that there were no obstructions in the trachea or larynx. This was objected to on the ground that S. should have been called and that L. could not say that the finger met with no obstructions. *Held*, that, as the evidence was confined to what was done and what appeared, its reception was proper.

It appeared that the stomach of the deceased and its contents were submitted to a professor of chemistry, who testified that he made an examination thereof and found no traces of arsenic or strychnine. In putting hypothetical questions to medical experts the prosecution assumed, among other things, that the chemist, after examining the stomach and contents " for arsenic and strychnine, *pronounced* their contents entirely free from those poisons." This portion of the question was objected to on the ground that it was incompetent and made the witness the judge of the testimony. The objection on appeal was to the use of the word " pronounced." The attention of the court was not called to the use of that word, and it appeared by the record that he was not aware at the time of the use of the word or the point of the objection, and that defendant's counsel knew this. *Held*, that said counsel should have called the court's attention particularly to the point, and should not have permitted it to make a ruling under a misapprehension which his general objection induced; and that, as it appeared by the context, the word complained of was used and must have been understood in the sense of " found," it was not probable that the jury were misled or the defendant prejudiced; and, therefore, there was no error requiring a reversal.

Upon the trial of an indictment for murder in the first degree, it is the duty of the jury first to consider and determine whether the defendant is guilty of the crime charged, as it is only after they have found him not guilty upon that charge that they are authorized under the Code of Criminal Procedure (§ 444) to find him guilty of any inferior degree of homicide.

Also, *held,* that in the absence of anything indicating that the defendant was prejudiced thereby, the reception of the verdict when defendant's counsel was not present was not error requiring a reversal.

(Argued April 11, 1888: decided April 24, 1888.)

Appeal from judgment of the Court of Oyer and Terminer in and for the county of Orleans, entered upon a verdict convicting the defendant of the crime of murder in the first degree.

The material facts are stated in the opinion.

*John H. White* for appellant. The evidence is insufficient, and justice requires a new trial. (Code of Crim. Pro. § 528.)

*W. P. L. Stafford* and *Irving M. Thompson* for respondent. Section 528 of the Code of Criminal Procedure, as construed by the court, does not exempt the party accused of murder in the first degree from the duty of presenting the usual and ordinary questions arising on a trial of a case, in the form and manner heretofore pursued in the trial of indictments, and the omission of counsel for the defendant to make proper objections, and take exceptions to alleged erroneous proceedings, deprives him of the privilege of claiming, as a matter of right in the appellate court, the benefit of errors occurring on the trial. (*People* v. *Driscoll,* 12 N. Y. State Rep. 254, 255.) If the jury finally impanneled and sworn was free from legal objections, a new trial will not be granted for erroneous rulings in sustaining challenges for cause by the People. (*People* v. *Casey,* 9 N. Y. 115; *State* v. *Bradley,* 48 Conn. 535; *Spies* v. *People* [Ill. Sup. Ct.], 10 West. Rep. 701; *Ex parte Spies.* 8 Sup. Ct. Rep. 22; Code of Crim. Pro., §§ 268, 273, 274, sub. 2; 275, 276, 278, 279, 376, sub. 2; 377, 455, sub. 2; 485, sub. 3; 517; Crim. Code of Cal., § 1170, sub. 1; *People* v. *Colson,* 49 Cal. 679; *People* v. *Murphy,* 45 id. 137; *People*

v. *Petmecky*, 2 N. Y. Crim. R. 458; *Walters* v. *People*, 32 id. 147, 160, 161; *O'Brien* v. *People*, 36 id. 275; *People* v. *Thomas*, 3 Alb. L. J. 210; 3 Rev. Stat. [6th ed.], 1029, § 17.) Unless the evidence shows the existence of actual bias on the part of a juror challenged, he shall be declared competent. (*People* v. *Carpenter*, 102 N. Y. 246; *O'Brien* v. *People*, 36 id. 278, 279; *People* v. *Thompson*, 41 id. 5; *Balbo* v. *People*, 80 id. 493; *Abbot* v. *People*, 86 id. 467–469; *Stout* v. *People*, 4 Park. Crim. R. 71; *Thoms* v. *People*, 67 N. Y. 221; *Abbott* v. *People*, 86 id. 466; *People* v. *Casey*, 96 id. 122; *People* v. *Otto*, 101 id. 690; *People* v. *Dewey*, 20 N. Y. Weekly Dig. 556.) As to whether the contusions, wounds or bruises upon the tissues of the jaw and upon the surface of the lips could have been made in the absence of mechanical cause, was a proper subject of expert testimony. (*Ferguson* v. *Hubbell*, 97 N. Y. 513; *Carter* v. *Boehm*, 1 Smith's Leading Cases, 286; Lawson's Expert and Opinion Evidence, 112; *Gardiner* v. *People*, 6 Park, Crim. R. 201, 202; *Kennedy* v. *People*, 39 N. Y. 256; *Colt* v. *People*, 1 Park. Crim. R. 611, 620; *Lindsley* v. *People*, 63 N. Y. 151; *State* v. *Knight*, 43 Md. 15–37; *State* v. *Pike*, 65 Me. 111–114; *Schlencker* v. *State*, 9 Neb. 250; *State* v. *Harris*, 63 N. C. 1; *Shelton* v. *State*, 34 Texas, 666; Abbot's Trial Brief, 55, No. 13; *Hartung* v. *People*, 4 Park. Crim. R. 326; *People* v. *Dalton*, 15 Wend. 585, 586; 26 N. Y. 154; *Carnal* v. *People*, 1 Park. Crim. R. 290.) The exception to the form of the indictment, and that the time at which the court was held at which it was found was not stated, and that it was not dated, was not well taken. (*People* v. *Peck*, 2 N. Y. Crim. R. 314; *People* v. *Reavy*, 4 id. 15; *People* v. *Conroy*, 97 id. 70.) It was discretionary with the court whether or not it would compel the prosecution, at the close of the case by the People, to elect upon which count of the indictment they would rely, and this discretion was properly and judiciously exercised. (*People* v. *Cole*, 2 N. Y. Crim. R. 180; *People* v. *Rudd*, 3 id. 180; *People* v. *Armstrong*, 70 N. Y. 42; *Cook* v. *People*, 2 T. & C., 405; *Hawker* v. *People*,

75 N. Y. 490.)   Homicide includes not only the death of the person alleged to have been killed, but also that uch persons was killed, and that such killing was by the act procurement or omission of another.   (Penal Code, §§ 179, 181; *People* v. *Beckwith*, 12 N. Y. S. Rep. 797.)

EARL, J.   The defendant was indicted for murdering his wife at Albion, in this state, on the 19th day of January, 1887. He was tried, convicted and sentenced to be hung.   He then appealed directly to this court, under section 517 of the Code of Criminal Procedure, as amended by chapter 493 of the Laws of 1887.   Under section 528, as amended, this court is authorized to order a new trial, "if it be satisfied that the verdict was against the weight of evidence, or against law, or that justice requires a new trial, whether any exceptions shall have been taken or not in the court below."

The defendant was thirty-six years old, and his wife thirty-three, and they were married in 1872.   At the time of her death they had five children, aged, respectively, fourteen, seven, six and four years, and an infant about three months old.   The claim, on the part of the prosecution, is that the defendant killed his wife by pressing a towel over her mouth, causing suffocation; and he claims that she died from natural causes.

We think there was abundant evidence to establish the guilt of the defendant.   Indeed, it has been very rare that the prosecution upon a trial for murder has been able to adduce more satisfactory evidence establishing the guilt of the accused than was adduced in this case, except where the homicide was committed in the presence or observation of witnesses who were called to testify to it.   Here there were previous threats of the defendant to take the life of his wife.   There was opportunity.   With the exception of the children, who were asleep, he was alone with her in the house, and thus had her in his power.   He was an athletic man, nearly six feet tall and weighing nearly two hundred pounds, while she was a small woman, weighing only about one hundred pounds.

There was a strong motive. He lived unhappily with her. He had three times abandoned her for other women, and upon each occasion was brought back, twice under arrest. At the time of the homicide, and for nearly a year previous thereto, he was very much infatuated with an unmarried woman living in the same village, in whose society he had apparently spent more of his time than in that of his wife. He saw her several times on the day preceding his wife's death, and was seen in earnest conversation with her; and there is evidence that he remained with her until two o'clock on the morning of the day when his wife was found dead, and that he went directly from her to his own house, and there within a brief time caused the death of his wife, and that soon after his wife's death he was the first in eager haste to inform her of that fact. His wife was apparently in good health down to the time of her death, and the autopsy disclosed no disease and no natural cause of death. There were several facts relating to his conduct in the morning, about the time of his wife's death, and thereafter, which point strongly to his guilt. The *post-mortem* indications, as testified to by physicians and others, while not conclusive evidence in themselves that her death was caused by suffocation, yet all pointed in that direction. The symptoms of asphyxia caused by suffocation were all, or nearly all, present, according to the testimony of the medical experts both for the prosecution and the defense. In addition to all this, we have his confession that he caused the death of his wife by suffocation, made to a witness whose character is in no way impeached.. Taking all this evidence, we think it excludes the hypothesis of innocence and points so strongly to the guilt of the defendant, that the jury could not justly have reached any other verdict than that which they rendered. We are satisfied, therefore, that the verdict was not against the weight of evidence, and that justice does not require a new trial, unless we find in the record some error of law prejudicial to the defendant.

The learned counsel for the defendant has called our attention to some places in the record where he claims errors of

law were committed. We have carefully examined and con-sidered all these alleged errors.

It is objected that the indictment is defective in not stating when and where the court was held at which the indictment was found, the name of the justice who held the court, and the names of the grand jurors. These matters are not now required to be stated. The indictment conformed precisely with the requirements of sections 273, 275 and 276 of the Code of Criminal Procedure.

At the close of the evidence on the part of the People, the counsel for the defendant requested the court to rule that the district attorney be compelled to elect which count of the indictment he would rely upon, and the motion was denied. It was conceded that all the counts charged murder in the first degree, the only variance being as to the means used to effect death and the manner in which it was accomplished. This mode of pleading in an indictment is expressly allowed by the Code of Criminal Procedure (§§ 278, 279); and even before the Code it was held to be discretionary with the court whether it would compel an election in such a case, and the rule has not been changed in that respect. (*People* v. *Armstrong*, 70 N. Y. 42; *People* v. *Hawker*, 75 id. 490.)

Several of the jurors, upon their examination as to their qualifications to act as such, testified that they had read newspaper accounts of the murder, and had heard the same talked about, and had some opinion or impression as to the guilt of the defendant which it might take evidence to remove. But they all declared on oath that they believed that such opinion or impression would not influence their verdict and that they could render an impartial verdict according to the evidence; and the court being satisfied that they entertained no such present opinion or impression as would influence their verdict, overruled the challenges of the defendant's counsel and permitted them to sit as jurors. We have carefully read the examination of these jurors and are satisfied that they were competent within section 376 of the Code of Criminal Procedure. (*People* v. *Greenfield*, 74 N. Y. 277; *People* v. *Balbo*,

80 id. 493; *People* v. *Abbott*, 86 id. 467; *People* v. *Casey*, 96 id. 115 ; *People* v. *Otto*, 101 id. 690 ; *People* v. *Carpenter*, 102 id. 238.) Several of the persons called as jurors had read evidence taken on the coroner's inquest upon the body of the deceased, and those persons were by the judge excluded. Their exclusion cannot be complained of by the defendant as error. The judge was not, as we must assume, satisfied that they could render an impartial verdict, or that the opinion or impression which they had formed upon reading the evidence would not influence their verdict.

The prosecution was permitted to give evidence that Mr. Pierson, the step-father of the defendant's wife, had made a will giving his property to the defendant and his wife, and after their death to their heirs; that he had made the contents of the will known to the defendant; that after Mr. Pierson heard that the defendant had left his wife and gone away with another woman he destroyed his will. There was an effort on the part of the district attorney to show that the defendant had been informed of the destruction of the will, but in this he failed. Therefore, upon motion of the defendant's counsel, the trial judge struck out the evidence as to the making and destruction of the will. If there was any error in the reception of the evidence, it was cured by striking it out, and nothing was left for the defendant to complain of.

The overseer of the poor of the town where the defendant lived was called by the prosecution and he testified that in May, 1883, he, as overseer of the poor, furnished the defendant's family aid and assistance. This was at the time the defendant had abandoned his family and gone away with another woman. His counsel moved to strike out this evidence. The trial judge denied the motion and such denial is now complained of as error. All the relations of the defendant with his wife were material evidence as bearing upon the question of his guilt, and it was competent to show that he abandoned his wife and children, leaving them destitute while he was away consorting with another woman. It showed a want of affection for his wife, a total neglect of her welfare and happiness, and

a shameful disregard of decency and duty in his treatment of her..

When his wife was seen by her neighbors, who were called in shortly after her death, there were two cuts through her under lip made by her lower teeth, as she had no upper teeth. It was the theory of both parties that those cuts and the laceration of the lower lip were made by two of her lower teeth. On the part of the prosecution it was claimed they were caused by the pressure of the lower lip while the defendant was smothering her. On the part of the defense it was claimed that they might have been made by herself while in a spasm. Dr. Lewis, who was the first physician called to see the body after her death, was asked these questions : "Did you form any opinion as to whether these contusions or wounds or abrasions were made before or after death? A. They were made before." Q. "What do you say as to their being made in the absence of mechanical cause ; could they be made in the absence of mechanical cause." The counsel explained that by mechanical cause he meant some cause outside of and other than the deceased herself. The defendant's counsel objected to the question and the court overruled the objection and permitted the witness to answer, and he answered "they could not." It is now argued that the laceration or cut on the lower lip was not the subject of expert evidence, and therefore that it was error to ask for the opinion and judgment of a professional witness as to the cause. We are of opinion that no error was committed. Jurors generally would not be as competent to form a judgment as to the cause as a physician who was acquainted with the anatomy of the human face, teeth and jaws, and more familiar with the action of those parts, with the effects and results of paroxysms, spasms and convulsions, with the possible action of those parts as voluntarily exercised by the person herself, with the thickness and strength of the membranes and parts injured and the force required to cause the injury, than a non-professional juror. We cannot see, from

the nature of the injury, that any error was committed in permitting the expert evidence, and such evidence has been frequently sanctioned in analogous cases. (*People* v. *Kennedy*, 39 N. Y. 245; *People* v. *Linsday*, 63 id. 143; *People* v. *Colt*, 1 Park. Crim. R. 611; *People* v. *Gardiner*, 6 id. 155; *State* v. *Knight*, 43 Me. 11; *Commonwealth* v. *Piper*, 120 Mass. 185; *Davis* v. *State*, 38 Md. 15; *State* v. *Pike*, 65 Me. 111.)

Dr. Lewis and Dr. Squires made the autopsy upon the body of the deceased, the cutting being done mainly by Dr. Squires. He was absent and was not called as a witness at the trial, and Dr. Lewis gave a description of what was done at the autopsy. Among other things, he testified that he saw Dr. Squires introduce his finger into the trachea or windpipe and pass his finger downwards, well down to the bifurcation, and that he saw him pass his finger up into the larynx, well up into the larynx and glottis. This evidence was for the purpose of showing that there was no obstruction in the trachea or windpipe or larynx. It was objected to on the ground that Squires should have been called, and that Dr. Lewis could not say that the finger did not meet with any obstruction. The objection was overruled, and we think properly. The witness simply described what was done and what appeared. All he could say and all he meant to say, was that when Dr. Squires thrust his finger into the cavities it apparently met with no obstruction, and so far the evidence was competent.

Counsel for the defendant objected to the hypothetical question put by the prosecution to Drs. Moore and Bailey, on the ground that it assumed facts not proved. We have carefully scrutinized the evidence and the question, and we find no facts assumed in the question which have not a fair basis in the evidence.

One criticism upon the hypothetical question may be particularly noticed. It appeared that the stomach and its contents and some of the urine of the deceased were taken to Prof. Lattimore, a professor of chemistry at the Rochester University, for examination and analysis. He made the

examination and applied the proper tests and found no traces of arsenic or strychnine. Among the assumptions contained in the hypothetical question put to Drs. Moore and Bailey by the district attorney was the following : " Assume that the stomach and contents, also four ounces of urine taken from the bladder, were preserved intact and delivered to a competent chemist and toxicologist, who after examining the former for arsenic and strychnine pronounced their contents entirely free from these poisons." The defendant's counsel objected to these words " who after examining the former for arsenic and strychnine pronounced their contents entirely free from these poisons." The only ground of objection specified was that it was incompetent and made the witness the judge of the testimony. The judge overruled the objection and this is now complained of as error, and the particular complaint is that the word " pronounced " was used. The defendant's counsel did not call the attention of the judge to the use of that word at the time the question was put, and it is manifest that the judge did not apprehend that the objection was based upon that ground. The context shows that the word " pronounced " was used and must have been understood in the sense of " found." The first time that particular attention was called to the use of that word was in the defendant's motion for a new trial, and the judge then stated that if his attention had been called to it at the time, he would have had a more appropriate word substituted in its place. The defendant's counsel then stated : " I am of the impression that your honor did not exactly get on to the point I was driving at. That is my impression. I will say so frankly. I did not think the court did at the time, otherwise it would not have allowed the word to stand." So it appears that counsel for the defendant was aware that the judge did not apprehend the point of his objection, and he should have called his attention particularly to it, and should not have permitted him to make a ruling laboring under a misapprehension which his general objection had induced. We agree with the judge that it is not probable that the use of that word in any way misled the jury or prejudiced

the defendant.    Even in a case of murder it is not to be permitted that counsel should mislead the trial judge and then take advantage of his misapprehension, for the purpose of obtaining a new trial for his client, unless it can be seen, with reasonable certainty, that the defendant has suffered some prejudice by it.

Some complaint is made to the charge of the judge.    We have carefully read it, and taking it as a whole, it was eminently fair and just to the defendant and could not have legally prejudiced his defense.    The judge charged the jury as follows: " If the killing is not intentional, but done through carelessness, or in the heat of passion, or while engaged in the commission of a misdemeanor, when the killing was not intentional, then it is manslaughter.    It is murder in the first degree if the killing is done intentionally, with deliberation and premeditation.    It is murder in the second degree if done intentionally, but without deliberation and premeditation The charge in this case is that of murder in the first degree. And it becomes the duty of the jurymen to first consider and determine whether or not the prisoner is guilty of the greater crime, that is, murder in the first degree.    For it is only after you become satisfied that he is not guilty of murder in the first degree that you have the right to consider the lesser degrees.    Or, rather, in case you are not satisfied beyond a reasonable doubt of the guilt in the greater degree, then you have the right to consider in the lesser degrees, so that you are to determine, in the first place, as to whether the killing was intentional, and was it with deliberation and premeditation ?    In other words, did the accused premeditate, think over, resolve in his mind, form a conclusion to do the act, and did he deliberate upon that ? "

The learned counsel for the defendant now claims that the judge erred in that portion of his charge in which he stated that " it becomes the duty of the jurymen to first consider and determine whether the prisoner is guilty of the greater crime, that is, murder in the first degree, for it is only after you become satisfied that he is not guilty of murder in the first

degree that you have the right to consider the lesser degrees."
In this we perceive no error. The defendant was charged in
the indictment with murder in the first degree, and to that
charge he pleaded, and for that charge he was put on trial, and
all the evidence was directed to the issue joined upon that
charge. It was the duty of the jury first to determine
whether he was guilty of that charge or not. That was the
primary subject to be investigated, and it was only after they
found him not guilty upon that charge that they were author-
ized, under section 444 of the Code of Criminal Procedure,
to find him guilty of any inferior degree of homicide.

One Jackson, a witness for the prosecution, testified that the
defendant admitted to him that he killed his wife by pressing
towels over her mouth and nose. The judge, in referring to
the testimony of Jackson as to the confession made to him,
said: "Of course, gentlemen, if this evidence be true, why
then it shows that he intentionally killed this woman on that
occasion." The counsel for the defendant excepted to this
portion of the charge, and then the judge said: "I did not
intend to so state. If I so stated I did not intend it. What
I intended to state upon the subject of Jackson's testimony, to
the effect that the defendant admitted to him that he had
killed his wife, is, that it is important to determine whether
this evidence is true or not. The question whether or not it
is true is for the jury. I also wish to say this, further, that
it becomes important evidence, too, upon the question of delib-
eration and premeditation, if his testimony be true. I do not
say that it establishes deliberation and premeditation." Coun-
sel for the defendant then said: "No, but your honor stated it
would show an intentional killing; not deliberation." The
judge then said · "I did not intend to so state, if I did."
With these explanations of the judge defendant's counsel
seemed to be satisfied, and no other objection or exception was
taken on the subject. But the judge also charged, upon the
request of defendant's counsel, "that the burden of proof of
intent rests with the prosecution. They must show the grade
of offense, and there is no legal implication from the act of

killing that it was murder." " That the jury have a right to say from the testimony of Mr. Jackson, if they believe his evidence, if they come to the conclusion that the defendant placed the towel over the mouth of his wife simply to stop the noise from being heard, without a design to kill her, and by that means, without intending to kill her, did so, it is only manslaughter in the second degree ; " and " that if there was no intention to kill her, then it would only be manslaughter in the second degree." We think, therefore, taking the whole charge together, there was clearly no error in that portion relating to Jackson and the confession made to him.

It is further objected that the defendant should have a new trial, because the verdict was received in the absence of his counsel. It appears that there was a misunderstanding between counsel and the judge, the former understanding that he was to be sent for when the jury came in, and the latter understanding that the counsel desired to be sent for only in case the jury came in for further instructions. The defendant's counsel was not, therefore, sent for. But when the jury rendered their verdict, the judge caused them to be polled, and it is not perceived how the absence of counsel in any way prejudiced the rights of the defendant. Of course, this objection is not brought here by any exception, and it is not ground for a reversal of the judgment, unless we can see that the prisoner was in some way prejudiced by the absence of his counsel; and that we are unable to perceive.

We have now noticed the principal grounds brought to our attention for the reversal of this conviction. We have carefully scrutinized the whole record for the purpose of discovering whether any error, although not pointed out by any exception, was committed, by which the defendant was in any way prejudiced, and upon the whole case we are satisfied that he was ably defended; that he had a fair trial, and that his conviction stands justified both by the evidence and the law.

The judgment should, therefore, be affirmed.

All concur.

Judgment affirmed.