■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES DIXON YORK, Also Known as BASHEER HAMEED, and ANTHONY LABORDE, Also Known as ABDUL MAJID, Appellants. —Appeal by the defendant James Dixon York, also known as Basheer Hameed, (1) from a judgment of the Supreme Court, Queens County (Browne, J.), rendered December 21, 1982, convicting him of attempted murder in the second degree, upon a jury verdict, and imposing sentence; and (2) by permission, from an order of the same court, dated November 14, 1983, which denied his motion to vacate the judgment.

Appeal by the defendant Anthony LaBorde, also known as Abdul Majid, (1) from a judgment of the same court, rendered January 24, 1983, convicting him of attempted murder in the second degree, upon a jury verdict, and imposing sentence; and (2) by permission, from an order of the same court, dated November 14, 1983, which denied his motion to vacate the judgment.

By decision and order dated January 26, 1987, this court, on its own motion, inter alia, (1) enlarged the record on appeal so as to include the order of the Supreme Court, Queens County (O'Brien, J.), dated December 19, 1983, which, after a hearing, denied the branches of the defendants' omnibus motions which were to suppress certain identification testimony; and (2) directed the parties to serve and file supplemental briefs addressed to the propriety of said order. The parties have now complied.

Ordered that with respect to the appeals of the defendant Anthony LaBorde the judgment and order are affirmed, and it is further,

Ordered that with respect to the appeal of the defendant James Dixon York the judgment is modified by vacating the sentence imposed, and remitting the matter for resentencing in accordance with the following memorandum; as so modified, the judgment is affirmed, and the order is affirmed.

The essential facts of this case are set forth in our previous decision (see, People v York, 126 AD2d 767). For the reasons stated in that decision, it was necessary to enlarge the record on appeal so as to include the minutes of the hearing held prior to the defendants' second trial in order to determine whether a certain prosecution witness, Charles George, who had allegedly been hypnotized, was competent to testify in accordance with the rules outlined in *People v Hughes* (59 NY2d 523) and *People v Tunstall* (63 NY2d 1). This hearing was held after the imposition of the sentences appealed from, but prior to a successive trial of a count in the indictment as to which no verdict was returned.

Having now reviewed the minutes of the *Hughes-Tunstall* hearing and the briefs of the parties filed with respect thereto, we find that it was proven by clear and convincing evidence that the subject witness for the prosecution was, as a matter of fact, not hypnotized. The determination of the hearing court to the contrary is against the overwhelming weight of the evidence. The witness himself denied that he had been hypnotized, and the police hypnotist also firmly asserted that no hypnosis had occurred. The police hypnotist stated that there was "nothing more than an interview with [Mr. George] with his eyes closed".

We are unpersuaded by the opinion of the defendants' expert, who was not present at the alleged hypnosis session, that Mr. George was, in fact, hypnotized. An expert witness for the prosecution testified that it was absolutely impossible for someone who had not been present at, or who had not viewed a videotape of the alleged hypnosis session, to make a determination as to whether hypnosis had occurred. The defendants' expert on hypnosis stated that there were no "thoroughly reliable criteria which in all situations can consistently be relied upon to determine in all instances whether or not the person is actually hypnotized". In light of this admission, we find this expert's claim that he was between 95 and 99% sure that Mr. George was hypnotized to be without foundation.

Since we find that the subject witness was, in fact, never hypnotized, it follows that any error which may have been

committed by the trial court in restricting defense counsel's attempts to cross-examine him in this area must be considered harmless beyond a reasonable doubt. The evidence of the defendant's guilt adduced by the People was truly overwhelming, and there is no possibility whatsoever that the jury's verdict would have been different had it been apprised of the fact that the police had unsuccessfully attempted to hypnotize one of the several witnesses to this crime. There is no rational possibility that had the jury learned of the circumstances of the attempted hypnosis, it would have concluded, contrary to every indication in the record of the hypnosis hearing, that the subject witness's testimony was in any manner tainted by the unsuccessful attempt to hypnotize him. A new trial is therefore not warranted on this basis.

Moreover, the defendants fail to point out, on appeal, how they were prejudiced by the court's restriction of cross-examination on the hypnosis issue. Since no significant details were recalled by Mr. George after the alleged hypnosis which had not already been recalled, there is no risk that the hypnotist "suggested" anything to Mr. George, and there is no risk that Mr. George "confabulated", i.e., made up details on his own. The risk of hypnotic suggestion or confabulation is often cited as proof of the unreliability of hypnosis *(see generally, Rock v Arkansas,* 482 US —, 97 L Ed 2d 37; *People v Hughes, supra).* Further, since Mr. George was certain that he was not hypnotized, it is difficult to see how there was any risk that he experienced "memory hardening", that is, an unwarranted confidence in the accuracy of his recollections *(see, People v Tunstall, supra).* Thus, the attempted hypnosis in this case is a tangential issue, so that any restriction on cross-examination in that regard was harmless beyond a reasonable doubt.

The defendants also argue that a new trial is required because the court failed to fully comply with various requests by the jury for the rereading of certain trial testimony. We note, however, that there was some ambiguity in the jury's requests, and the court responded to the requests in a meaningful way. Extensive portions of the trial testimony were read back, and the jury expressed its satisfaction with the testimony which was reread. Ambiguity in a jury's request is one of the factors to be considered in determining if the court committed reversible error in failing to respond to such request *(People v Malloy,* 55 NY2d 296, 302, *cert denied* 459 US 847). Further, the reviewing court may assess the potential prejudice which might have enured to the defendants as a result of any failure to comply fully with such jury requests

*(People v Malloy, supra)*. In the case under review, where the evidence of guilt is overwhelming, even if isolated portions of these witnesses' testimony were omitted from the readbacks, there was no "serious prejudice to the [defendants'] rights" *(People v Jackson,* 20 NY2d 440, 455, *cert denied* 391 US 928; *see also, People v Donovan,* 118 AD2d 722, *lv denied* 67 NY2d 942).

The defendants also contend that the court improperly invited a compromise verdict. After the jurors expressed their difficulty in arriving at a verdict, the court charged that they would be allowed to return a verdict on some counts, but not on others, so that they should render a verdict on whatever counts they could agree on. Counsel objected to this supplemental charge, stating only that "I thought [the court's] statement about the different counts was an attempt to force a compromise verdict, and I object to it".

The defendants' contentions with regard to the propriety of the charge are unpreserved for appellate review in light of the vague and generalized objection by defense counsel. In any event, with regard to the consecutive or noninclusory concurrent counts submitted to the jury *(see,* CPL 300.30 [2], [4]), the court's supplemental charge was entirely proper. Arguably, however, the charge was not correct to the extent that the jury was instructed that it could consider the lesser of two inclusory concurrent counts before reaching a verdict as to the greater inclusory concurrent count *(see, People v Boettcher,* 69 NY2d 174, *affg* 118 AD2d 65). We note that in deciding, in the *Boettcher* case *(supra),* that no error occurs when, based on the *People's* objection, a trial court refuses to issue a charge instructing the jury that it may consider a lesser included offense before having agreed upon a verdict as to the greater, the court did not necessarily hold it reversible error to issue such a charge in the *absence* of an objection by the People. The *Boettcher* court noted, in fact, that such charge would ordinarily be prejudicial to the People, thus rendering it anomalous to suggest that the issuance of such a charge could be deemed prejudicial to a defendant.

Turning to the defendants' remaining contentions, we find that many of their allegations of prosecutorial misconduct were not properly preserved for appellate review *(see, People v Medina,* 53 NY2d 951). Moreover, the prosecutor was entitled to respond vigorously to the defendants' attorneys, who in their summations referred to the prosecution witnesses as, e.g., a "perjurer", an "absolute liar", and "touched in the head".

We also find that the defendants' contention that the verdict rendered was repugnant is without merit *(see, People v Tucker,* 55 NY2d 1, *rearg denied* 55 NY2d 1039). Further, we conclude that the defendants have failed to show the existence of any exculpatory evidence which was suppressed by the prosecution. Even assuming that the evidence referred to by the defendants was, in fact, exculpatory, there is no "reasonable probability that, had [it] been disclosed to the defense, the result of the proceeding would have been different" *(United States v Bagley,* 473 US 667, 682; *People v Chin,* 67 NY2d 22, 33).

Finally, however, it is necessary to remit the case for resentencing only as to the defendant York. This defendant's status as a predicate felon was based on his having been convicted in New Jersey of two separate counts or assault and battery upon a law enforcement officer in the performance of his duties (NJ Stat Annot former § 2A:90-4) as well as the New Jersey crime of escape or attempted escape by a prisoner (NJ Stat Annot former § 2A:104-6). Since the New Jersey assault statute under which the defendant York was convicted had no requirement that the victim suffer physical injury *(see, State v Moran,* 73 NJ 79, 372 A2d 1092, *affg* 136 NJ Super 188, 345 A2d 351) it is not equivalent to any felony under New York law. However, the New Jersey escape statute under which the defendant York was convicted criminalizes a number of different acts, some of which, if committed in New York, would constitute the crime of escape in the second degree (Penal Law § 205.10), a class E felony. Accordingly, the matter should be remitted for a hearing to determine whether York's previous escape conviction was based on acts which constitute a felony in New York *(see, People v Gonzalez,* 61 NY2d 586; *People v Scott,* 111 AD2d 45). Thompson, J. P., Brown, Eiber and Kunzeman, JJ., concur.