*319 OPINION OF THE COURT
James A. Yates, J.
Anselmo Helliger is charged with murder in the second degree (depraved indifference) and manslaughter in the first degree (intent to cause serious physical injury). By the defendant’s own admission and testimony, he came home late, after drinking with friends, and, when criticized by the woman with whom he lived, Diane Murray, he “held her by the neck to push her away”, and shoved her to the bed to “keep her quiet”. Ms. Murray suffered a fractured hyoid bone and died almost immediately. Mr. Helliger admitted causing Ms. Murray’s death, however, two attempts at an allocution as part of a plea to the manslaughter count, urged upon the court by the parties, failed because, on each occasion, Mr. Helliger insisted that he “never meant to hurt her”.
Mr. Helliger is a 58-year-old man who has worked at various times as a cook, welder and electrician. He has no prior criminal history.
At trial, the defendant testified that he was unaware of the risk of death which might follow his actions and, as before, he claimed he never intended to hurt Ms. Murray. Accordingly, four charges were submitted, in the alternative, to the jury: murder in the second degree and manslaughter in the first degree, the two counts contained in the indictment, and, in addition, manslaughter in the second degree (reckless homicide) and criminally negligent homicide, as lesser included offenses. The jury was instructed that it could find the defendant guilty of one, but not more than one, of the submitted offenses.
At the defendant’s request, after two full days of deliberation and repeated declarations of impasse by the jury, the court accepted a partial verdict. The jury found the defendant guilty of criminally negligent homicide. In response to inquiry by the court, the jury reported that it had been unable to agree upon any of the other counts submitted. The People now seek to retry the defendant upon one or more of the unresolved counts. Defendant argues that the “verdict of guilty * * * is deemed an acquittal of every greater offense submitted” (CPL 300.50 [4]; 300.40 [3]), and, therefore, he may not be tried again on the unresolved counts.
COUNTS SUBMITTED IN THE ALTERNATIVE
The two counts charged in the indictment, depraved indifference murder and intentional manslaughter, are “inconsistent *320 counts” within the meaning of CPL 300.30 since, under the facts of this case, the defendant either acted intentionally with regard to the result, or he recklessly caused Ms. Murray’s death by consciously disregarding the probability of that result. The two charges are mutually exclusive and, accordingly, were submitted in the alternative. (CPL 300.40 [5]; People v Robinson, 145 AD2d 184, affd 75 NY2d 879 [1990]; People v Harrison, 85 NY2d 891 [1995]; see also, People v Gallagher, 69 NY2d 525 [1987] [charges of intentional murder and depraved indifference murder are inconsistent since one cannot perform a single act both recklessly and intentionally with regard to the same result]; but see, People v Trappier, 87 NY2d 55 [1995] [intent to cause serious physical injury, where death did not result, is not inconsistent with reckless disregard of a substantial risk of death, since the defendant could have entertained distinctly different states of mind with regard to two different results].)
Although the two counts are inconsistent, criminally negligent homicide is, nonetheless, a lesser included offense of both counts charged in the indictment. Criminally negligent homicide is a lesser included offense of depraved indifference murder as charged in the first count of the indictment. (People v Hawkins-Rusch, 212 AD2d 961 [4th Dept 1995], lv denied 85 NY2d 910 [1995]; People v Green, 56 NY2d 427 [1982] [crimes of lesser mental culpability are necessarily included in greater crimes involving the same conduct but requiring greater mental culpability]; People v Stanfield, 36 NY2d 467 [1975] [holding criminally negligent homicide to be a lesser included offense of a reckless manslaughter charge].) As well, criminally negligent homicide is a lesser included offense of intentional manslaughter as charged in the second count of the indictment. (People v Stallings, 128 AD2d 908 [2d Dept 1987]; People v Usher, 39 AD2d 459, affd 34 NY2d 600 [1974]; cf., People v Wall, 29 NY2d 863, 864 [1971] [where, on the facts presented, the defendant shot the victim twice, the “defendant was guilty of an intentional shooting or no other” but adding, “[t]his is not to say * * * that in a proper case criminally negligent homicide might not be a lesser included offense under a manslaughter indictment”].)
Accordingly, the jury was asked to consider four charges in the alternative and a verdict sheet was presented to it containing, in descending order: murder in the second degree, manslaughter in the first degree, manslaughter in the second degree and criminally negligent homicide.
*321 ORDER OF CONSIDERATION — TRANSITION CHARGE
Submission of lesser included offenses not charged in an indictment evolved in common law as an aid to prosecution. (2 Hale, The History of the Pleas of the Crown 301-302 [1736]; 2 Hawkins, Pleas of the Crown 623 [6th ed 1787]; 1 Chitty, Criminal Law 250 [5th Am ed 1847]; Starkie, Criminal Pleading 351-352 [2d ed 1822]; People v Willson, 109 NY 345 [1888].) “[Submission of a lesser included offense redounds to the benefit of the People * * * for it may prevent ‘the prosecution from failing where some element of the crime charged was not made out’ ”. (People v Green, 56 NY2d 427, 433 [1982], quoting People v Murch, 263 NY 285, 291 [1934].)
Over time, however, defendants grew to appreciate the advantage, in some circumstances, of presenting a lesser included offense to the jury. “From the perspective of the accused, submission of a lesser included offense enables the jury to extend mercy by providing a less drastic alternative than the choice between acquittal and conviction of the offense charged”. (People v Green, 56 NY2d, supra, at 433, citing People v Mussenden, 308 NY 558, 562 [1955]; People v Rytel, 284 NY 242, 245.[1940]; Beck v Alabama, 447 US 625, 633 [1980].)
As such, the right to demand submission of a lesser offense belongs to neither side exclusively and may be invoked by the People or the defendant over the other’s objection. (CPL 300.50 [2].) The statute aside, the right of a defendant to demand consideration of a lesser offense has been elevated to a “quasi-constitutional” status. (See, e.g., Beck v Alabama, 447 US, supra, at 637 [1980] [“While we have never held that a defendant is entitled to a lesser included offense instruction as a matter of due process, the nearly universal acceptance of the rule in both state and federal courts establishes the value to the defendant of this procedural safeguard”]; Keeble v United States, 412 US 205, 213 [1973] [“Indeed, while we have never explicitly held that the Due Process Clause of the Fifth Amendment guarantees the right of a defendant to have the jury instructed on a lesser included offense, it is nevertheless clear that a construction of the (statute) to preclude such an instruction would raise difficult constitutional questions”].)
Once the decision is made to submit a lesser offense, the question then arises whether a jury must be instructed to consider the charges in any particular order. There are three traditional “transition” charges or options put to a jury: (a) the “step approach” or “acquittal-first rule” requiring a unanimous jury acquittal of the greater charge before it may proceed to *322 consider a lesser; (b) the “unable to agree” charge which directs a jury to consider the lesser only if it is unable to agree on the greater charge; and, finally, (e) the “unstructured” approach which does not require any particular sequence of deliberation. (See generally, Abele, Jury Deliberations and the Lesser Included Offense Rule: Getting the Courts Back in Step, 23 UC Davis L Rev 375 [1990].)
The acquittal-first rule, logically, favors a prosecution effort to secure conviction upon the greater offense since it precludes any consideration by a divided jury of a lesser offense unless and until all 12 jurors are convinced that the greater offense has not been proven. If a segment of the jury, whether a majority, a minority or even a lone holdout, insists upon “all or nothing” then the result will either be a conviction of the greatest offense submitted or a hung jury and retrial. (See, e.g., Wright v United States, 588 A2d 260, 261 [DC 1991] [“acquittal first instruction is impermissibly coercive when given to a deadlocked jury”]; but see, Cooper, Should Juries Be Able To Agree To Disagree? People v. Boettcher and the ‘Unanimous Acquittal First’ Instruction, 54 Brook L Rev 1027 [1988] [arguing that strict application of an acquittal-first rule is not always beneficial to the prosecution].)
The unstructured transition charge, on the other hand, may favor the defendant since it invites, or at least permits, a compromise verdict based on sympathy. While an argument can be made that, historically, a jury has the power to impose its own sense of fairness and social conscience in mitigation to arrive at a compromise verdict (see generally, Abramson, We, the Jury 30 [1994] [“(T)hroughout the eighteenth century the prevailing view remained that jurors ‘could ignore judges’ instructions on the law and decide the law by themselves’”]), courts usually instruct juries that they do not have the power to invoke lenity in order to discourage its exercise. (Compare, People v Goetz, 73 NY2d 751, 752 [1988] [arguing that the “so-called ‘mercy-dispensing power’ * * * is not a legally sanctioned function of the jury”], with United States v Powell, 469 US 57, 63 [1984] [finding it to be an “established principle” that a verdict may reflect an “ ‘ “assumption of a power which they had no right to exercise, but to which they were disposed through lenity” ’ ” (citations omitted)], and People v Tucker, 55 NY2d 1, 7 [1981] [describing lenity as “an accepted power of the jury”].)
Courts at common law initially followed the acquittal-first approach, perhaps in implicit recognition of the history sur *323 rounding submission of a lesser offense; since it was the prosecution which sought consideration of lessers when there was a defect in the proof, it would seem fair to have a jury consider the lesser only under that circumstance. This common-law tradition worked its way into early codifications. (See, Rev Stat of NY, part IV, ch I, tit VII, § 27 [1829],[1] discussed in Dedieu v People, 22 NY 178; see also, People v Miller, 143 App Div 251 [1st Dept 1911].) And when New York revised its rules of criminal procedure, with enactment of the Code of Criminal Procedure in 1881, the Legislature required application of the acquittal-first rule by providing, “Upon an indictment for a crime consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment, and guilty of any degree inferior thereto, or of an attempt to commit the crime.” (Code Crim Pro § 444 [1881] [repealed 1970].)
Thus, by statute, a jury could not avoid resolution of the greater while convicting of a lesser. The Code of Criminal Procedure required a finding of not guilty upon the crime charged before a court could accept a verdict of guilty upon the lesser. The Court of Appeals upheld use of the acquittal-first rule in 1888, shortly after the adoption of the Code of Criminal Procedure, citing section 444 as authority for its imposition. (People v Willson, 109 NY, supra, at 357 [“(I)t was only after they found him not guilty upon that charge that they were authorized, under section 444 of the Code of Criminal Procedure, to find him guilty of any inferior degree of homicide”].) Although grounded in the common law and tradition, the acquittal-first rule was a policy choice established by the Legislature, which, of course, has the power to adopt, reject or modify the Willson rule.
In more recent years, commentators have noted a “trend away from the step approach” in a number of other jurisdictions,
“Recognition of the lesser included offense instruction as a quasi-constitutional right prompted some state courts to move away from the step approach. These courts feared that structuring jury deliberations would invade the jury’s province as ultimate fact-finder. These courts also feared that this invasion would deny a defendant the benefits of the right to an *324 alternative less drastic than acquittal or conviction of the charged offense * * *
“An increasing number of state courts have adopted disagreement instructions * * * [which] do not require juries to reach a conclusion on the charged offenses before considering other offenses.” (Jury Deliberations and the Lesser Included Offense Rule: Getting the Courts Back in Step, op. cit., at 377-378, 381 [citing seven States which had moved to a disagreement or “unable to agree” instruction between 1977 and 1989].)
Similarly, over the same time span, four Federal appeals courts have held that upon a defendant’s timely request an instruction should be given which permits the jury to consider the lesser offense if reasonable efforts to reach a verdict on the greater fail. (United States v Tsanas, 572 F2d 340 [2d Cir], cert denied 435 US 995 [1978]; United States v Jackson, 726 F2d 1466 [9th Cir 1984]; Catches v United States, 582 F2d 453 [8th Cir 1978]; Jones v United States, 544 A2d 1250 [DC 1988].)
BOETTCHER AND THE 1970 REVISION OF THE CRIMINAL PROCEDURE LAW
The New York Court of Appeals has expressed a clear preference and continued support for the acquittal-first instruction. (People v Boettcher, 69 NY2d 174 [1987]; People v Johnson, 87 NY2d 357 [1996].) However, in the intervening years between Willson (supra) (1888) and Boettcher (1987), the Code of Criminal Procedure was repealed and replaced with the enactment of the Criminal Procedure Law in 1970. (Criminal Procedure Law, as added by L 1970, ch 996.) The relatively spare provisions of Code of Criminal Procedure §§ 444 and 446 (procedures for submission of lesser offenses) were superseded by detailed and complete language of CPL article 300. While the decision in Willson explicitly rested upon the mandatory language in Code of Criminal Procedure § 444, requiring an acquittal of the greater charge, the language relied upon by the Court was omitted in the comprehensive 1970 revision. No longer did the legislation explicitly require that a step transition charge be given. The question then arises: did the Legislature exercise its prerogative to have New York join the modern trend, abandoning the more traditional acquittal-first rule?
Moreover, when it repealed the language in section 444 of the old Code of Criminal Procedure, requiring an acquittal on the “charged” or greater count, the Legislature was not entirely silent as to the charge to be given when a lesser offense was submitted. In fact, the Legislature took the unusual step of *325 providing, in statute, specific instructions which must be given to the jury. Section 444 of the Code of Criminal Procedure was replaced with new language which now provides: “Whenever the court submits two or more offenses in the alternative pursuant to this section [governing submission of lesser included offenses], it must instruct the jury that it may render a verdict of guilty with respect to any one of such offenses, depending upon its findings of fact, but that it may not render a verdict of guilty with respect to more than one.” (CPL 300.50 [4] [emphasis supplied].)
CPL 300.50 informs a jury that it may, i.e., is permitted to, render a verdict of guilty with respect to any one offense submitted while eliminating the requirement of a not guilty verdict on the greater charge. It would seem by plain and direct language the Legislature has now provided for an “unable to agree” transition charge. Given the developing trend away from the acquittal-first rule by other State and Federal courts around the date of enactment of the Criminal Procedure Law, this is not necessarily surprising.
Although, the Court in Boettcher noted that “[t]he Commission Staff Notes do not explain why different language was chosen when the Criminal Procedure Law was enacted” (People v Boettcher, supra, 69 NY2d, at 181), the new language was enacted as part of a comprehensive revision; it is, therefore, difficult to argue that the omission was unintentional. It is fair to presume a certain perspicacity on the part of the Commission and the Legislature. At the time the 1970 revision was being drafted a petition for certiorari, claiming a right to an “unable to agree” charge, was presented to and refused by the Supreme Court. (Fuller v United States, 407 F2d 1199, 1227 [DC Cir 1967], cert denied 393 US 1120 [1969].) It is unlikely that this issue went unnoticed in New York. Simply put, as a matter of common legislative interpretation, the omission from a comprehensive revision could not have been unintentional. Here, moreover, the omission did not stand alone. It was more than “dropped”; it was rewritten.
Contemporaneous with the new language for submission, the Legislature also declared, “A verdict of guilty of any such offense is not deemed an acquittal of any lesser offense submitted, but is deemed an acquittal of every greater offense submitted.” (CPL 300.50 [4].) This was simple acknowledgment that the change in procedure would, on occasion, result in “implied acquittals”. (See, Green v United States, 355 US 184 [1957]; People v Ressler, 17 NY2d 174 [1966].) There would be *326 no reason to write the language if the Legislature did not contemplate a clear break from the acquittal-first procedure under the old Code of Criminal Procedure. It was foreseen, with the 1970 revision, that on occasion, there would be jury convictions on lessers with the decision on the greater offenses left unresolved — an outcome which had not been permitted in the past. Therefore, it became necessary to provide for implied acquittals.
Compare the legislative treatment of inconsistent counts, also presented in the alternative, where a court is directed to instruct the jury “that if it renders a verdict of guilty upon one such count it must render a verdict of not guilty upon the other.” (CPL 300.40 [5].) This language is more akin to the provision in the old Code of Criminal Procedure in that the jury must render a verdict of not guilty on one count before the court can accept a verdict of guilty on the other. By contrast, CPL 300.50, governing submission of lessers, allows conviction on “any one of such offenses” but does not require a vote of not guilty as to any other offense. Obviously, in writing CPL 300.50, the Legislature could have retained the language of section 444 of the Code of Criminal Procedure or it could have employed language similar to the new section CPL 300.40 (5), instructing a jury that if it renders a verdict of guilty upon a lesser offense it must render a verdict of not guilty upon the greater. It did neither.
In sum, by repeal of the language relied upon in Willson (supra), by enactment of a clear and mandatory language to be read to a jury in place of the acquittal-first rule, and by enactment of a comprehensive plan to deal with “implied acquittals”, which were anticipated as a probable outcome as a consequence of the change in law, the Legislature affirmatively opted to join the modern trend, followed by other States and Federal courts, permitting a jury to consider lesser offenses even when they fail to agree upon the greater.
BOETTCHER IN THE COURT OF APPEALS
In People v Boettcher (supra), the Court of Appeals was asked to follow the Tsanas formulation, recently adopted by the Court of Appeals for the Second Circuit, which gave the defendant the right to demand an “unable to agree” transition charge. In Tsanas, the court noted that early consideration of a lesser offense sometimes favors the defense and sometimes favors the prosecution. As such, given the “quasi-constitutional” right of a defendant to call for submission of a lesser, the Tsanas court *327 decided that the right to invoke consideration when a jury cannot agree on the greater offense belongs to the defendant as well.
The Boettcher Court specifically rejected the Tsanas rule. The Court cited various policy arguments in favor of an acquittal-first instruction.
First, the Court noted that application of the implied acquittal rule would have a “deleterious” effect upon the People. (People v Boettcher, supra, 69 NY2d, at 182.) However, it is not unlikely that the Legislature weighed that in the balance when it adopted the 1970 revision.
Secondly, and “more importantly”, the Court elected to “reject Tsanas (supra) and its progeny because they give insufficient weight to the principle that it is the duty of the jury not to reach compromise verdicts based on sympathy for the defendant or to appease holdouts, but to render a just verdict by applying the facts it finds to the law it is charged”. (People v Boettcher, supra, 69 NY2d, at 183.)
Nonetheless, not all disagreement upon greater counts arises because jurors improperly inject sympathy into their decision. Logically speaking, there are three possible reasons for disagreement upon the top count: (1) all the jurors are acting rationally and some find the top count is supported by the evidence while others do not; (2) some jurors are acting irrationally or injecting mercy, lenity of sympathy into the case such that they refuse to convict on the top count despite ample support in the evidence; or (3) the evidence only supports a lesser offense but some jurors are acting irrationally or injecting bias, hostility or emotion into the case such that they refuse to acquit on the top count despite flaws in the proof. In reaching its decision in Boettcher (supra), the Court only discussed one of the three causes of disagreement, jury sympathy.[2] If, however, the disagreement is not rooted in sympathy for the defendant, then the “more important” reason, cited in Boettcher, for reviving the Willson rule dissipates. The rationale for the acquittal-first rule is the desire to avoid lending encouragement to jurors who are irrationally holding out for a lesser charge. At the same time, a concomitant concern should be that the acquittal-first rule lends support to jurors who are *328 irrationally holding out for a greater charge. In cases of a potentially inflammatory nature, e.g., the awful strangulation of an innocent partner as alleged in the case at bar, the court may not wish to ignore the possibility that a holdout for conviction may also be acting irresponsibly or out of undue sympathy. Rationality does not necessarily favor one side or the other when there is disagreement. When a court submits a greater and a lesser, a legal determination has been made that either position could be rationally based. A court may only submit a lesser offense when “there is a reasonable view of the evidence which would support a finding that the defendant committed such lesser offense but did not commit the greater.” (CPL 300.50 [1].) There is no legal presumption that one position is more rational than the other. In cases where lenity is not the primary or only evil to be avoided, it may be wise for the court to read the statute to the jury, as the Legislature has directed, and advise them that they may convict upon any of the counts submitted without adding the Willson proscription to the statutory language.
How then should a lower court read and apply Boettcher (supra)? Must a court read an acquittal-first charge to a jury in every case, notwithstanding the repeal of section 444 of the Code of Criminal Procedure? Must a court disregard the mandatory instruction contained in CPL 300.50? Is there a way to reconcile the apparent, or potential, conflict between the statute and controlling precedent?
Upon closer analysis, it is not clear that Boettcher (supra) requires an acquittal-first direction in every case regardless of circumstance. For example, in People v York (133 AD2d 130, 133, lv denied 70 NY2d 939 [1987]), the Appellate Division, Second Department, decided that “no error occurs when, based on the People’s objection, a trial court refuses to issue a charge instructing the jury that it may consider a lesser included offense before having agreed upon a verdict as to the greater”.
Of course, the York argument is merely the flip-side of the Tsanas ruling. Tsanas (supra) held that the option (to invoke an “unable to agree” transition) belonged to the defense. York (supra) held that the option belongs to the prosecution. Logic would seem to argue against both positions: the option should be with the court, not one of the parties. Just as the determination of whether to submit a lesser rests with the court, not the parties, the determination as to how to submit the charges should be based on reason rather than strategy as well. It would seem that the statute and its history can be reconciled *329 with Boettcher (supra) by a reading that permits an “unable to agree” transition charge when a trial court finds the particular circumstances of the case reasonably justify such a charge.
In Boettcher, the Trial Judge gave an acquittal-first instruction and the Court held, “In the present case, the trial court’s rejection of the defendant’s request to charge, and its instruction to the jury to consider the lesser included offense only upon reaching a unanimous verdict of not guilty of the greater, were correct.” (People v Boettcher, 69 NY2d, supra, at 183 [emphasis added].) The holding approved a trial court’s denial of a defendant’s request for an “unable to agree” transition charge in that case. The holding did not abolish all judicial discretion to grant the request in another, more appropriate, case.
Similarly, the Boettcher Court disapproved “so much of the instruction in 1 CJI (NY) 14.05 as gives the defendant the 'unable to agree’ transition charge option”. (People v Boettcher, 69 NY2d, supra, at 183, n 6 [emphasis added].)[3] Again, the holding did not deny trial courts any discretion in this area, it merely held that the defendant does not have the unilateral right to compel any particular order of consideration, thereby rejecting Tsanas (supra).
The Court of Appeals itself has not had occasion to instruct whether the acquittal-first instruction must be applied in all cases regardless of circumstance. The statute does not mandate the instruction and policy would only seem to dictate it where it is appropriate to avoid irrational compromise verdicts. (“Nothing contained in article 300 of the Criminal Procedure Law * * * directs the order in which the jury should consider the various offenses submitted to it.” [People v Johnson, 87 NY2d 357, 360 (1996)].) Although Boettcher (supra) rejected the Tsanas defendant-option rule, there are cases where the best policy might be to explain fully and accurately the true state of the law to the jury. A court could explain to the jury that a conviction on a lesser will be “deemed” to be an acquittal on the greater in the absence of express agreement. An intelligent, informed jury may be the best way to deal with the dual problems of irrational sympathy for the defendant, on the one hand, and irrational hostility against the defendant or undue sympathy for the victim, on the other.
*330 BOETTCHER AND CULPABLE MENTAL STATES
In the present case, the four counts submitted were not distinguishable by acceptance or rejection of proof in support of different facts. The direct evidence in support of each charge was identical — the defendant admitted intentionally grabbing Ms. Murray by the throat and shoving her to the bed. The cause of death went unchallenged. The crimes submitted for consideration were not to be distinguished by juror acceptance or rejection of any fact or piece of evidence offered to them. The critical distinction amongst the charges was in the conclusion to be drawn from the evidence regarding the defendant’s state of mind.
It has been noted that “[t]he doctrine of lesser included offenses is not without difficulty in any area of the criminal law. Its application as to criminal homicides is particularly elusive.” (Fuller v United States, 407 F2d, supra, at 1228.) Although the four charges presented in this case are called lesser included offenses,
“it is not strictly accurate when crimes are differentiated on the basis of the kind of intention the actor must have. For example, proof of an intentional killing does not, in a sense, establish that the actor was reckless. There is more precise analysis in the Model Penal Code § 1.07(4) which defines an offense as included when * * *
“(c) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest or a lesser kind of culpability suffices to establish its commission.” (Fuller v United States, supra, at 1228, n 28.)
Asking a jury to agree upon the one mental state which is best proven circumstantially from accepted facts engages a different kind of decision-making than that which normally accompanies submission of lesser included offenses. Logically speaking, “being unaware of a risk” (negligence) is not necessarily included when a person acts with a “conscious disregard of a risk” (recklessness), which, in turn is not necessarily included within “intending a consequence” (acting intentionally). Therefore, finding the appropriate level of culpability in such "a case is not merely a process of elimination whereby the jury considers the charges in descending order based upon the adequacy of proof regarding any one particular element. The Boettcher formulation is best suited for cases where a fact in dispute is the primary distinguishing character *331 istic between a greater and lesser offense, e.g., was “serious physical injury” proven or is it merely “physical injury”? In those cases, if the elements common to both offenses are proven, the jury can then focus its attention on whether the additional element necessary to prove the greater offense is proven and eliminate unproven charges by acquittal of the greater offense. However, where the lesser and greater are only distinguished by different levels of mental culpability, and where proof of one does not necessarily include proof of the other, the mechanical reductive process required by Boettcher (supra) can be inappropriate. As Judge Kaye recently explained,
“Lesser included offenses of a single count must be charged in the alternative. The accused by definition cannot be found to have had more than one of the mental states on the kaleidoscope of culpable mental states, and the trier of fact must determine which one is applicable. As we made clear in Green, that rule[4] as applied to lesser included offenses was adopted in part to benefit the accused — enabling the trier of fact to extend mercy by providing a less drastic choice than acquittal or conviction of the crime charged — as well as the State— preventing an empty prosecution where some element of the crime charged was not made out * * *
“the jury * * * [is] asked to find one mental state or the other”. (People v Gallagher, supra, 69 NY2d, at 531 [emphasis added].)
In the case at bar, because the task put to the jury was to “find one mental state or the other”, the court opted to read the statutory charge, as required, without the Boettcher addition.
During the course of deliberations, the jury repeatedly declared that they were unable to agree on some of the higher charges, but could agree on one or more of the lesser charges. In all, seven notes were sent to the court indicating partial agreement on one or more counts, but deadlock on higher charges. On each occasion the jurors were asked to continue deliberations to see if they could agree on the greater charges. Under the particular circumstances of this case, where the dividing issue was selection of the appropriate mental state to be inferred from the same set of facts, at the time, the court did not feel that Boettcher (supra) required an acquittal-first instruction. Rather, the court opted to respect the intelligence and integrity of the jurors by explaining the law, so that the *332 choice they made would be an informed one. “If you find the defendant guilty of a lesser offense and you announce that to me, that is your verdict, then that is deemed an acquittal of all the greater offenses. So that if some of you think that he is guilty of a greater offense and some don’t it doesn’t get registered as a mistrial and start over again. That ends the proceeding. The conviction on the lesser is accepted as a guilty finding and the greater is deemed an acquittal.”
Further, the jury was informed that the court would only accept a verdict on a lesser if it was firmly convinced that there was, in the words of the statute which was read to them, “no reasonable possibility” of agreement on the greater charges. After several declarations of impasse, a note was sent saying, “We truly believe that we have exhausted all avenues of discussion, and there is no, even remote possibility of reaching a full verdict. (We are however able to reach consensus on at least one of the charges.) * * * At this point none of the jurors believe that they have anything left to say. We can see no purpose in continuing to try to reach a full verdict.”
The court finally accepted the jury’s declaration that no such reasonable possibility existed. The jury had been given full opportunity to consider and return a verdict as to each charge in the indictment. (Contrast, People v Charles, 78 NY2d 1044 [1991]; see also, People v Jackson, 20 NY2d 440, cert denied 391 US 928 [1968] [holding, in a case where the jury was not afforded the opportunity to consider an inconsistent count presented in the alternative, no verdict was rendered as to that count].) As required by CPL 310.70, the court accepted the partial verdict. The jury, fully aware that agreement on the lesser offense would imply an acquittal of the greater offenses, nonetheless announced agreement on the count charging criminally negligent homicide. At the People’s request, the court specifically asked the jury whether it had reached any agreement on the greater offenses. They had not.
THE people’s APPLICATION FOR RETRIAL ON THE GREATER OFFENSES
As the court explained to the jury, a conviction on the lesser included offense is deemed to be an acquittal on the unresolved offenses. This elementary proposition is not only required as a matter of State and Federal constitutional law (see, People v Boettcher, 69 NY2d, supra, at 182 [“(A) retrial on the greater offense would be barred under settled double jeopardy principles (Green v United States, 355 US 184, 190-191; People v *333 Ressler, 17 NY2d 174, 179-181 * * *)”]), but, as well, is required by two sections of the Criminal Procedure Law. (CPL 300.40 [3]; 300.50 [4].)
The People maintain that the jury’s announced failure to agree permits reprosecution by reason of an amendment to CPL 310.70, adopted in 1974, allowing continued prosecution where the charge of conviction is not an “offense of higher or equal grade” to the unresolved counts. (CPL 310.70 [2] [b].) Notably, the amendment to CPL 310.70 did not prohibit acceptance of a partial verdict as occurred here. It merely provides for further disposition of unresolved counts after the verdict is taken. In some instances reprosecution is barred, in others it is authorized. As such an argument could be made that criminally negligent homicide is not a lesser included offense of intentional manslaughter, notwithstanding Wall, Stanfield, Green and Trappier (supra). However, even upon such a holding, renewed prosecution would be barred by double jeopardy considerations (see, e.g., United States ex rel. Hetenyi v Wilkins, 348 F2d 844 [2d Cir 1965], cert denied sub nom. Mancusi v Hetenyi, 383 US 913 [1966]), as well as the statutory prohibition against convictions upon inconsistent counts. (CPL 310.70 [2] [a]; People v Charles, supra.) In any event, to the extent that the section is inconsistent with Green, Ressler (supra) and CPL 300.40 and 300.50, as well as the above-cited language in Boettcher (supra), the court is compelled to grant the defendant’s motion.
Accordingly, as explained to the jury before it rendered its verdict, the counts of murder in the second degree and manslaughter in the first degree are deemed to have resulted in an acquittal and are dismissed.

. “Upon an indictment for any offence consisting of different degrees * ** * the jury may find the accused not guilty of the offence in the degree charged in the indictment, and may find such accused person guilty of any degree of such offence, inferior to that charged” (Rev Stat of NY, part IV, ch I, tit VII, § 27 [1829]).

. As discussed earlier, an argument can be made that the decision to invoke lenity is not necessarily improper (see, United States v Powell, 469 US 57, supra; People v Tucker, 55 NY2d 1, supra). However, in light of Goetz (supra), for purposes of discussion the court assumes that this would be improper.

. The CJI Committee had adopted a Tsanas formulation following the Legislature’s elimination of the Willson language in the Criminal Procedure Law.

. People v Green, 56 NY2d 427, supra (accepting the fiction that crimes separated only by mental culpability are necessarily included within each other along the hierarchy of mental culpability contained within Penal Law § 15.05).